# United States Court of Appeals for the Federal Circuit

2009-1140
(Serial No. 78/717,427)

IN RE MICHAEL SONES

James R. Menker, Holley & Menker, P.A., of Atlantic Beach, Florida, argued for appellant.

Thomas V. Shaw, Associate Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Arlington, Virginia, argued for the Director of the United States Patent and Trademark Office. With him on the brief were Raymond T. Chen, Solicitor, and Janet A. Gongola, Associate Solicitor.

Appealed from: United States Patent and Trademark Office
Trademark Trial and Appeal Board

# United States Court of Appeals for the Federal Circuit

2009-1140
(Serial No. 78/717,427)

IN RE MICHAEL SONES

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board.

_____

DECIDED: December 23, 2009

_____

Before NEWMAN, RADER, and LINN, Circuit Judges.

Opinion for the court filed by Circuit Judge LINN. Dissenting opinion filed by Circuit Judge NEWMAN.

LINN, Circuit Judge.

This is an appeal from the Trademark Trial and Appeal Board ("Board") involving the requirements for an Internet specimen of use. Michael Sones appeals a final decision of the Board denying his registration application for the mark "ONE NATION UNDER GOD" for charity bracelets. In re Sones, Serial No. 78/717,427 (T.T.A.B. Sept. 30, 2008) ("Opinion"). Because the Board applied an incorrect legal standard to deny Sones' application, we vacate and remand.

## BACKGROUND

Sones filed an intent-to-use application for his mark with the U.S. Patent and Trademark Office ("PTO") under 15 U.S.C. § 1051(b) (2006). The Board published it for opposition, and after the opposition period expired, issued a notice of allowance on August 15, 2006. On February 15, 2007, within six months of allowance as required by

§ 1051(d), Sones submitted his Statement of Use with a specimen of use. Sones' specimen consisted of the following two pages from a website:




J.A. 25-26. The submitted webpages bear the title "Beaches Chapel School Store" and contain a product listing, "ONE NATION UNDER GOD[TM] CHARITY BRACELET >> for $2.00." Under the listing, the following text appears: "ONE NATION UNDER GOD[TM], CHARITY BRACELET, CHOICE OF BLUE OR RED $2.00 EACH." The pages also display "shopping cart" functionality for online ordering, including buttons for "View Cart" and "Add to Cart." Next to the description is a shaded, square graphic that says only, "*Photo not availble* [sic]."

The PTO rejected Sones' Statement of Use in a non-final office action on June 11, 2007, noting that Sones' specimen "does not show a picture of the goods in close proximity to the mark." U.S. Trademark Appl. Serial No. 78/717,427, Office Action, at 2

(June 11, 2007).  The office action informed Sones that he could submit a substitute specimen to cure this defect.  Sones submitted rebuttal arguments, but did not submit a picture of his charity bracelets or a new textual description, apparently because he did not possess such a specimen of use prior to the filing date of his Statement of Use, as required by 37 C.F.R. § 2.59(b)(2) (2009).  See Oral Arg. at 2:46-3:09, available at http://oralarguments.cafc.uscourts.gov/mp3/2009-1140.mp3.  On July 23, 2007, the PTO issued a final office action affirming the rejection over Sones' arguments.

Sones appealed to the Board.  The Board affirmed, echoing the examiner's objections to Sones' specimen of use: "Upon examination of the webpages, it is readily apparent that they do not include a picture of the goods."  Opinion at 7.[1]  Sones appealed according to 15 U.S.C. § 1071(a)(1), and we have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

"We review the [Board]'s conclusions of law de novo and affirm its findings of fact if they are supported by substantial evidence."  In re Thrifty, Inc., 274 F.3d 1349, 1351 (Fed. Cir. 2001).

---

[1] On September 30, 2008, the same day that the Board's Opinion was mailed, Sones filed another application to register "ONE NATION UNDER GOD" for "charity bracelets."  U.S. Trademark Appl. Serial No. 77/582,593.  In that application, Sones alleged actual use in commerce at least as early as January 23, 2008, and submitted a website specimen that showed a picture of bracelets.  This application appears to be a reaction to the Board's Opinion and an effort to obviate the problem in the original specimen, but with attendant loss of the September 21, 2005 constructive use date of the application before us.  See 15 U.S.C. § 1057(c).  Because Sones has not abandoned the present application, the issue before us is not mooted by the filing of the second application, the propriety of which may depend on the result after remand in this case and is not before us.  See 37 C.F.R. § 2.48 (2009) ("Office does not issue duplicate registrations.").

A trademark owner uses a mark "to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127; see also BellSouth Corp. v. DataNational Corp., 60 F.3d 1565, 1569 (Fed. Cir. 1995) ("The primary function of a trademark is to identify and distinguish the goods or services of one source from those sold by all others . . . ."). To ensure that the applicant uses the mark in commerce for these purposes, the PTO requires the applicant to submit a specimen of use "showing the mark as used on or in connection with the goods." 37 C.F.R. § 2.56(a) (2009).

Sones argues that the Board imposed a bright-line rule that a trademark specimen of use taken from a website must contain a picture. At oral argument, the court asked the PTO's counsel, "Is the Patent Office saying that for every Internet marketing use you have to have a picture?" Counsel eventually responded, "We would say no." See Oral Arg. at 29:07-37. But the office actions, the Board's opinion, and the PTO's appeal brief belie counsel's answer. In the first office action, the examiner cited the rule that a web catalog or webpage specimen is acceptable to show trademark use as a display associated with the goods only if it includes a picture of the relevant goods. See Trademark Manual of Examining Procedure ("TMEP") § 904.06(a)-(b) (4th ed. 2005) (noting that "examining attorneys should accept any catalog or similar specimen as a display associated with the goods, provided: (1) it includes a picture of the relevant goods . . ."). The examiner then followed this rule, stating that Sones' "web catalog does not show a picture of the goods in close proximity to the mark. In fact, the specimen does not show a picture of the mark at all." U.S. Trademark Appl. Serial No.

78/717,427, Office Action, at 2 (June 11, 2007). The final office action was more adamant about a picture requirement. The examiner re-cited the rule stated in the first office action, emphasizing that a display is acceptable "**only** if" it includes "*a picture of the relevant goods*." U.S. Trademark Appl. Serial No. 78/717,427, Final Office Action, at 2-3 (July 23, 2007) (emphases in original). The examiner then concluded that "[t]he specimen of record does not contain a picture of the goods and thus is unacceptable as showing use of the goods in commerce." Id. at 3 (emphasis added).

The Board Opinion followed the bright-line rule stated in the office actions. While it mentioned the inadequacy of Sones' textual description of his charity bracelets, the Board noted that "the purported ubiquitousness of charity bracelets does not obviate the requirement for a picture of applicant's particular charity bracelets." Opinion at 8. It then concluded that Sones failed to satisfy "the criteria . . . that the specimen (1) include a picture of the relevant goods and (2) show the mark sufficiently near the picture of the goods to associate the mark with the goods." Id. at 9.

The PTO's briefing to this court is to like effect. The PTO briefly notes that the non-pictorial information in Sones' specimen would be insufficient to show use in commerce, contending that "[t]he web pages do not contain even a single line of text to distinguish the source of the goods." PTO's Br. 17. Otherwise, the PTO's arguments focus exclusively on the specimen's lack of a picture. E.g., id. 15 ("Sones argues that a photo of the goods in relation to the proposed mark is not required for a display specimen . . . . Sones is mistaken."). The PTO also interprets the TMEP as indicating that "the webpage must show the goods, not merely list them, as Sones[] has done." Id.

In sum, the PTO's position has been consistent from prosecution up to oral argument in this appeal: a website specimen of use must have a picture of the goods.

The PTO finds support for this "rule" in <u>Lands' End, Inc. v. Manbeck</u>, 797 F. Supp. 511 (E.D. Va. 1992). In <u>Lands' End</u>, the district court addressed a specimen of use from a mail order catalog. Lands' End applied to register the mark "KETCH" for purses. The company submitted a specimen that consisted of a page of its catalog that showed "the picture of a purse, a verbal description, and the term 'KETCH.'" <u>Id.</u> at 513. The PTO examiner and Board rejected the specimen for failing to qualify as a "display associated with the goods." In response, Lands' End filed a civil action in district court. In a brief opinion, the court concluded that "Lands' End's use of the term 'KETCH' with the picture of the purse and corresponding description constitutes a display associated with the goods." <u>Id.</u> at 514. It observed that the catalog pages "include a picture and a description of each item." <u>Id.</u> at 512. The court's decision, however, turned on the "point of sale nature of this display," which allowed a customer "to make a decision to purchase by filling out the sales form and sending it in." <u>Id.</u> at 514.

Afterwards, the PTO interpreted and adopted <u>Lands' End</u> in the TMEP, creating a new section specifically for "catalogs as specimens." <u>See</u> TMEP, Instructions Regarding Revision 1 (2d ed. 1997); <u>see also</u> 2 J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u> § 16:32 (4th ed. 2008) [hereinafter McCarthy]. This section defined the new test for catalogs, citing <u>Lands' End</u>:

> In accordance with this decision, examining attorneys should accept any catalog or similar specimen as a display associated with the goods, provided that (1) <u>it includes a picture of the relevant goods</u>, (2) it includes the mark <u>sufficiently near the picture</u> of the goods to associate the mark with the goods, and (3) it includes information necessary to order the

goods.  Any form of advertising which satisfies these criteria should be construed as a display associated with the goods.

Id. § 905.06(a) (emphases added).  This test still appears in the latest version of the TMEP, § 904.03(h) (6th ed. Oct. 12, 2009).

The PTO has since applied this three-part test and Lands' End to electronic specimens of use.  In In re Hydron Technologies, Inc., the Board found that a television "infomercial" that displayed the trademarked slogan, with the goods shown "immediately before or immediately after," was an acceptable specimen.  51 USPQ2d 1531, 1534 (T.T.A.B. 1999).  It cited Lands' End for the importance of "the proximity between the pictures of the goods in the catalog and the mark," but also noted that the infomercial provided a point of sale because customers could call and order the product.  Id.  Then, in In re Dell, Inc., the Board considered a webpage specimen that contained a picture of a desktop computer and the registered mark.  71 USPQ2d 1725 (T.T.A.B. 2004).  "Following the reasoning of the Lands' End decision," the Board said, "we hold that a website page which displays a product, and provides a means of ordering the product, can constitute a 'display associated with the goods,' as long as the mark appears on the webpage in a manner in which the mark is associated with the goods."  Id. at 1727.  The Board cited the three-part test from the TMEP (then § 904.06(a) of the 2003 third edition) and found that the specimen sufficed because it displayed the product and enabled online ordering.  Id. at 1727-28.

The Board has continued to apply this reasoning to Internet specimens, emphasizing the importance of pictures.  It found in In re Valenite that webpage printouts for tools that "show[ed] pictures of the goods" and provided ordering information was a proper specimen.  84 USPQ2d 1346, 1349-50 (T.T.A.B. 2007).

However, it rejected an online ordering form that included no picture, only a hyperlink to a page with a picture, observing that "it clearly does not display the goods in association with the mark." In re Miss. Cheese Straw Factory, Inc., Serial No. 76/617,223, slip op. at 6 (T.T.A.B. Oct. 21, 2004). Recently, the Board accepted a website specimen for "unprocessed corn," focusing on whether the photographs of the corn satisfied "the first requirement" set out in Lands' End and Dell—namely, whether they showed the relevant goods. In re Felix Mauro Torres, Serial No. 78/621,656, slip op. at 7-8 (T.T.A.B. May 12, 2009). Collectively, these decisions show that the Board has adopted its interpretation of the Lands' End test for catalog specimens to website specimens, including a rigid requirement for a picture.

We do not interpret Lands' End or the law of trademarks to require that specimens of use from the Internet must always have pictures. First, Lands' End itself did not impose the three parts of the TMEP test as absolute requirements. The catalog in that case included a picture, but the court cited other factors in approving the specimen, such as the ability to order the purses through the catalog and the prominence of the mark. It noted: "A crucial factor in the analysis is if the use of an alleged mark is at a point of sale location." 797 F. Supp. at 514; see also In re Osterberg, 83 USPQ2d 1220, 1222-23 (T.T.A.B. 2007) ("In [Lands' End], the determinative factor was that the mark was used at the point of sale."). Furthermore, "[t]he point of sale nature of this display, when combined with the prominent display of the alleged mark with the product, leads this court to conclude that this mark constitutes a display associated with the goods." Lands' End, 797 F. Supp. at 514 (emphasis added). At bottom, the critical inquiry was whether the customer had "the opportunity to

look to the displayed mark as a means of identifying and distinguishing the source of goods." Id. Nowhere did the court say that a photograph is mandatory, much less apply this rule to website catalogs.

Second, the Board's bright-line rule has no basis in trademark statute or policy. "It is well established . . . that the purpose of a trademark is to distinguish goods and to identify the source of goods." In re Int'l Flavors & Fragrances Inc., 183 F.3d 1361, 1367 (Fed. Cir. 1999); see also McCarthy § 3:3 ("The prime question is whether the designation in question, as actually used, will be recognized in and of itself as an indication of origin for this particular product or service."). To this end, the Lanham Act requires an applicant to show "use in commerce," which is "the bona fide use of a mark in the ordinary course of trade." 15 U.S.C. § 1127. To show such use, the mark must be "placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto." Id. The statute thus specifies no particular requirements to demonstrate source or origin; for displays, the mark must simply be "associated" with the goods. See In re Marriott, 459 F.2d 525, 526 (CCPA 1972) ("The terms of the statute [15 U.S.C. § 1127] are met if the mark is placed 'in any manner' on the 'displays associated' with the goods.").

For brick-and-mortar stores, there is no rule that specimens of use must show pictures. According to the TMEP, "a label is an acceptable specimen" where the mark "is applied to the goods or the containers for the goods," even by shipping or mailing labels. § 904.03(a) (6th ed. Oct. 12, 2009) (emphasis added). On containers, "a showing of the trademark on the normal commercial package for the particular goods is an acceptable specimen." Id. § 904.03(c). Thus, a product box that bears the

trademark, but does not display a picture of the goods or allow customers to see the goods, may be an acceptable specimen. See Jerome Gilson, 1 Gilson on Trademarks § 3.02 (2009) ("Solid products have greater flexibility, inasmuch as the mark may be impressed directly on them during the manufacturing process. Of course, use on their containers or associated displays is equally acceptable."). As to displays associated with goods, the Board has found that a display bearing a trademark for chemicals at a trade show booth was an adequate specimen, even though the chemicals were not present or visible at the booth. In re Shipley Co., 230 USPQ 691, 692 (T.T.A.B. 1986). Similarly, our predecessor court found that a menu describing a sandwich's ingredients sufficiently associated a trademark with the sandwich. Marriott, 459 F.2d at 526-27. While the menu "frequently has a small illustration of the sandwich," the court found that customers could order based on the "word or pictorial depiction of the sandwich." Id. (emphasis added). Thus, tangible specimens—whether labels, containers, or displays—can show use in commerce by describing the goods in sufficient detail in relation to the marks.

Given these criteria for physical specimens of use, we see no reason why websites must necessarily have pictures to associate a trademark with the goods being sold. The PTO recognizes that "[i]n effect, the website is an electronic retail store, and the web page is a shelf-talker or banner which encourages the consumer to buy the product. A consumer using the link on the web page to purchase the goods is the equivalent of a consumer seeing a shelf-talker and taking the item to the cashier in a store to purchase it." TMEP § 904.03(i); see also Dell, 71 USPQ2d at 1727. At oral argument, when asked whether, if Sones' product description were printed on boxes of

charity bracelets instead of a website, the PTO would still reject it, the PTO's counsel replied, "the Office would probably consider them acceptable specimens." Oral Arg. at 17:53-18:37. If, as the TMEP suggests, ordering from a website is "the equivalent" of picking up a box in a store, and boxes do not need photographs per se to link a trademark to the goods inside, then neither should websites. The PTO argues that websites differ from menus, for example, because "you can sell just about anything these days over the Internet via website." Id. at 15:17-20. But the ubiquity of Internet commerce does not prove that consumers always need product pictures to associate trademarks with goods.

We decline to follow the TMEP's interpretation of Lands' End and the three-part test, as applied to websites. We note that the TMEP is instructive, but "is not established law." In re Pennington Seed, Inc., 466 F.3d 1053, 1059 (Fed. Cir. 2006). Moreover, it is unclear to what extent the TMEP requires pictures for electronic specimens such as websites. The TMEP states the three-part test under § 904.03(h) for "Catalogs." But this section is immediately followed by a separate category for "Electronic Displays," § 904.03(i). While this latter section states that "[a] website page that displays a product, and provides a means of ordering the product, can constitute a 'display associated with the goods,'" it does not recite the three-part test. Nor does it say that a picture is required for all electronic displays—what matters is whether "the mark is associated with the goods" on the webpage.

In light of the foregoing, we hold that a picture is not a mandatory requirement for a website-based specimen of use, and that the test for an acceptable website-based specimen, just as any other specimen, is simply that it must in some way evince that the

mark is "associated" with the goods and serves as an indicator of source. Precedent such as Lands' End and Dell establishes that a visual depiction of a product is an important consideration in determining whether a submitted specimen sufficiently associates a mark with the source of the goods. It might well be that the absence of a picture will render website specimens ineffective in many cases and will be, as the PTO argues, "[a] crucial factor in the court's analysis." PTO's Br. 12-13. But a picture is not the only way to show an association between a mark and the goods, and we cannot approve of the rigid, bright-line rule that the PTO applied here.

On remand, the PTO must consider the evidence as a whole to determine if Sones' specimen sufficiently associates his mark with his charity bracelets so as to "identify and distinguish the goods." BellSouth, 60 F.3d at 1569; see also Damn I'm Good, Inc. v. Sakowitz, Inc., 514 F. Supp. 1357 (S.D.N.Y. 1981) (finding "Damn I'm Good" on bracelets to be ornamental, not source-identifying). Relevant factors include, for example, whether Sones' webpages have a "point of sale nature," Lands' End, 797 F. Supp. at 514, and whether the actual features or inherent characteristics of the goods are recognizable from the textual description, given that the more standard the product is, the less comprehensive the textual description need be. See McCarthy § 19:48 ("The applicant's identification of goods . . . should identify the goods by their common, ordinary name so that the average person would recognize what they are."). The term "charity bracelet" is listed in the PTO's Acceptable Identification of Goods and Services Manual under Class Code 014. See TMEP § 1402.04 (describing the Manual as "a listing of acceptable identifications of goods and services . . . that are acceptable in the [PTO] without further inquiry" for application purposes). Though not dispositive, the

"use of the designation 'TM' . . . lends a degree of visual prominence to the term." <u>Dell</u>, 71 USPQ2d at 1729. These and other factors will help determine whether Sones' mark "signifies the source and quality of the goods." <u>Int'l Flavors</u>, 183 F.3d at 1366.

## CONCLUSION

For the foregoing reasons, the Board's decision is vacated and remanded for further proceedings consistent with this opinion.

<u>VACATED</u> and <u>REMANDED</u>

# United States Court of Appeals for the Federal Circuit

2009-1140
(Serial No. 78/717,427)

IN RE MICHAEL SONES

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board.

NEWMAN, <u>Circuit Judge</u>, dissenting.

The court today issues an advisory opinion on a non-issue as between the parties. It makes no difference what we hold as to whether this examiner in this case had the right to ask for a picture, for the applicant has provided a picture. The trademark is being examined, and the picture is not at issue. "The case has therefore lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law." <u>Hall v. Beals</u>, 396 U.S. 45, 48 (1969). The appeal should be dismissed as moot. <u>See</u> <u>Steffel v. Thompson</u>, 415 U.S. 452, 459 n.10 (1974) ("The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."); <u>Flast v. Cohen</u>, 392 U.S. 83, 95 (1968) (advisory opinions are not within the purview of Article III).

The PTO informed the court of Trademark Application Serial No. 77/582,593, filed on September 30, 2008, to register the same mark, based on actual use with the same goods. A picture of the mark in association with the goods was filed – this is the requirement that is the subject of this appeal. The trademark Rules prohibit the registration of duplicate marks for the same goods, 37 C.F.R. §2.48 (2009), yet Application No. 77/582,593 is undergoing prosecution,[1] leaving the application here on appeal redundant. This court's elaborate opinion is on a non-issue, for an absent controversy.

Our judicial attention on this appeal, to the right-or-wrong of the examiner's request in this application for a picture showing the mark in association with the goods, has been overtaken by the voluntary act of the applicant in filing the application based on actual use, and supplying a picture, voluntarily. The applicant has removed the issue from controversy, rendering it moot. Mootness arises on "a case-by-case judgment regarding the feasibility or futility of effective relief should a litigant prevail." In re AOV Indus., Inc., 792 F.2d 1140, 1147–48 (D.C. Cir. 1986). As to Mr. Sones' intent-to-use application, no effective relief is feasible, or needed.

The application to register the mark based on actual use is receiving examination. Indeed, this court's instruction as to what should be considered on remand of the application that is before us, such as whether the mark is merely ornamental, is the subject of examination in the concurrent application. The issue is the same, whether for intent to use or actual use. There remains no basis for appealing the

---

[1] See http://tarr.uspto.gov/tarr?regser=serial&entry=77582593. Although the PTO stated in its brief that the application had been stayed, the public record shows continued prosecution, including an official action dated September 3, 2009, five days before this oral argument.

intent-to-use application, when the applicant chose to file an application based on actual use. The question of whether a picture was properly required no longer has relevance to any relief available to this applicant. As the Court stated in Renne v. Geary, 501 U.S. 312, 316 (1991), "[c]oncerns of justiciability go to the power of the federal courts to entertain disputes, and to the wisdom of their doing so." Even if we had the "power" to discuss this question, it is not in dispute.

My colleagues state their concern that if this appeal is dismissed, the applicant may lose a "constructive use" date for priority purposes. This speculative theory does not turn a dead question into a live controversy. No issue of priority is presented, and any ruling thereon would be dictum. The only question on appeal is the propriety of the examiner's request for a picture. When the applicant chose to proceed by separate application based on actual use, and to file a picture, he averted any potential rejection on this ground. See Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997) (voluntary resolution of the disputed issue moots the appeal of that issue).

Indeed, if there were a sound reason for concurrent prosecution of this intent-to-use and the actual-use application for the same mark, I should be glad to know it. However, I can only speculate as to whether there may still be a reason why this appeal is not moot, for my colleagues on this panel have declined to issue an order inquiring of the parties. "Emotional involvement in a lawsuit is not enough to meet the case-or-controversy requirement; were the rule otherwise, few cases could ever become moot." Ashcroft v. Mattis, 431 U.S. 171, 173 (1977).

In the posture of this case, the appeal is moot. From my colleague's contrary ruling, I respectfully dissent.