THIS OPINION
IS A PRECEDENT OF THE
TTAB

Mailed: 4/15/10

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

In re Quantum Foods, Inc.

_____

Serial No. 78960554

_____

Joseph F. Schmidt of Husch Blackwell Sanders Welsh & Katz for Quantum Foods, Inc.

Justine D. Parker, Trademark Examining Attorney, Law Office 101 (Ronald R. Sussman, Managing Attorney).

_____

Before Seeherman, Quinn and Walsh, Administrative Trademark Judges.

Opinion by Quinn, Administrative Trademark Judge:

Quantum Foods, Inc. filed, on August 25, 2006, an intent-to-use application to register the mark PROVIDING PROTEIN AND MENU SOLUTIONS ("PROTEIN" disclaimed) (in standard characters) for "processed meats, beef, pork, poultry and seafood sold in portions; fully cooked entrees consisting primarily of meat, beef, pork, poultry or seafood."

The application was examined and the mark subsequently was published for opposition. After no opposition was

filed, the Office issued a notice of allowance. Applicant subsequently filed a statement of use setting forth a date of first use and first use in commerce of June 1, 2006, together with a specimen. When the examining attorney indicated that the specimen was unacceptable, applicant submitted a substitute specimen.

The examining attorney refused registration on the ground that the proffered specimens are unacceptable as evidence of trademark use because they do not show use of the involved mark in connection with the goods set forth in the identification. Trademark Act Sections 1, 2 and 45, 15 U.S.C. §§1051, 1052 and 1127.

When the refusal was made final, applicant appealed. Applicant and the examining attorney filed briefs.

After the examining attorney refused to accept applicant's original specimen, applicant responded by submitting a substitute specimen,[1] shown below, identified by applicant as an image "of a web page from applicant's website."

---

[1] Applicant does not contend that its original specimen is acceptable, and therefore we have focused our attention, as have applicant and the examining attorney, on the acceptability of the substitute specimen. We agree with the examining attorney that the original specimen is unacceptable in that it is mere advertising.



With respect to the substitute specimen, the examining attorney states that it is unacceptable "because it failed to show the necessary ordering information or a web link for ordering the goods and thus appeared to be mere advertising material."  (Brief, p. 4).

In urging that the refusal to register be reversed, applicant argues as follows:

> The web page does, in fact, show
> ordering information.  If you go to
> applicant's website
> www.quantumfoods.com and click on "For
> Foodservice," the specimen [shown
> immediately above] will appear.  If you
> put the cursor over "FOR FOODSERVICE,"
> a drop down menu appears which includes
> a "contact us" link.  If you click on
> the "contact us" link, you are routed
> to the customer service page which

contains an email address and toll free number for contacting applicant's customer service department for, among other things, placing an order for the goods.[2]

Thus, applicant's website satisfies the requirements for a proper webpage specimen, i.e., (1) a picture of the relevant goods, (2) the mark appears directly above the goods, and (3) a visible weblink to order the goods by clicking on "For Foodservice."

(Brief, pp. 1-2).

The examining attorney responds as follows:

[A] web catalog, web page, or similar specimen, which is otherwise a form of advertising, is acceptable to show trademark use as a display associated with the goods if it includes (1) a picture of the relevant goods, (2) the mark appearing sufficiently near the picture of the goods so as to associate the mark with the goods, and (3) information necessary to order the

---

[2] Applicant attached to its brief this additional "Contact Us" page from its website. This webpage lists applicant's email address (along with certain blank fields that a user may populate with information, including an email message to applicant) and a toll-free phone number, with the text: "We're on call to create the right custom solution for your operation. Contact Quantum now to learn how we can work for you." The examining attorney objected to the evidence as an untimely submission. Trademark Rule 2.142(d) provides that the record in an application should be complete prior to the filing of an appeal, and the Board will ordinarily not consider additional evidence filed after the appeal is filed. Accordingly, the examining attorney's objection is sustained, and the additional evidence has not been considered in reaching our decision. Even if considered, however, it would not result in a different conclusion about the acceptability of the specimen. While the use of the "Contact Us" webpage may eventually result in a sale, it appears to be no more calculated to do so than any corporate contact email address or phone number that would result in the call or email being referred to the sales office.

goods (e.g., sales form, price list, instructions for ordering, etc.) or a visible weblink to order the goods. Without this necessary information, the specimen is mere advertising and is not acceptable to show use in commerce for goods. [citations omitted].

In the present case, the specimen shows applicant's proposed mark above two [sic] pictures of meals on plates. Below the pictures, applicant describes its services as follows: "We believe you shouldn't have to settle for a product or a 'me too' menu. That's why we work with you to create truly custom beef, pork and poultry solutions that perform in your kitchen and on your menu. Because at Quantum Foods, your success is our first priority." At the top of the page, four squares appear that have the following headings: "About Us," "For Restaurants," "For Consumers," and "For Foodservice." Upon viewing the specimen, consumers will understand that applicant can create customized menu solutions. Thus, the specimen shows use of the proposed mark in connection with a service applicant provides. Because the specimen does not have instructions or information for ordering goods, consumers will not know that they can contact applicant to order "processed meats, beef, pork, poultry and seafood sold in portions; fully cooked entrees consisting primarily of meat, beef, pork, poultry or seafood." The specimen, therefore, is unacceptable because it does not show use of the proposed mark in connection with the goods listed in the application.

Applicant's appeal brief argues that the web page shows the necessary ordering information by clicking on "For Foodservice" on the upper right-

> hand corner of web page and, thus, is an acceptable specimen of use. The examining attorney respectfully disagrees. The webpage does not contain any instructions informing consumers that if they click on "For Foodservice" they will be able to order applicant's goods. Indeed, the totality of the specimen informs consumers that applicant can create custom beef, pork and poultry solutions for their kitchen or menu. Thus, the specimen shows use of the proposed mark in connection with a service, creating menu solutions, and does not show use of the proposed mark in connection with the goods.

(Brief, pp. 4-5).

Online shopping in an "electronic retail store" is pervasive in the business world, and the Federal Circuit and the Board have considered the acceptability of specimens with respect to goods sold in e-commerce. The Federal Circuit, in the case of *In re Sones*, 590 F.3d 1282, 93 USPQ2d 1118, 1123 (Fed. Cir. 2009), quoting the language in TMEP §904.03(i) (6th ed. 2009), stated that "the PTO recognizes that '[i]n effect, the website is an electronic retail store, and the web page is a shelf-talker or banner which encourages the consumer to buy the product. A consumer using the link on the web page to purchase the goods is the equivalent of a consumer seeing a shelf-talker and taking the item to the cashier in a store to purchase it.'" The Federal Circuit also stated, "the test for an

acceptable website-based specimen, just as any other specimen, is simply that it must in some way evince that the mark is 'associated' with the goods and serves as an indicator of source." *Id.*

The Board has stated the following:

> [W]e hold that a website page which displays a product, and provides a means of ordering the product, can constitute a "display associated with the goods," as long as the mark appears on the webpage in a manner in which the mark is associated with the goods. It is a well-recognized fact of current commercial life that many goods and services are offered for sale on-line, and that on-line sales make up a significant portion of trade. Applicant itself sells many goods on-line.

> In today's commercial environment, we must recognize that the banners, shelf-talkers and other point of purchase displays that are associated with brick and mortar stores are not feasible for the on-line shopping setting. Web pages which display goods and their trademarks and provide for the on-line ordering of such goods are, in fact, electronic displays which are associated with the goods. Such uses are not merely advertising, because in addition to showing the goods and the features of the goods, they provide a link for ordering the goods. In effect, the website is an electronic retail store, and the webpage is a shelf-talker or banner which encourages the consumer to buy the product. A consumer using the link on the webpage to purchase the goods is the equivalent of a consumer seeing a shelf-talker and

> taking the item to the cashier in a
> brick and mortar store to purchase it.

*In re Dell Inc.*, 71 USPQ2d 1725, 1727 (TTAB 2004).

However, an Internet web page that merely provides information about the goods, but does not provide a means of ordering them, is viewed as promotional material, which is not acceptable to show trademark use on goods. *See In re Genitope Corp.*, 78 USPQ2d 1819, 1822 (TTAB 2006). *See also* TMEP §904.03(i) (6th ed. 2009). In the case of *In re Valenite Inc.*, 84 USPQ2d 1346, 1348 (TTAB 2007), the Board found that a webpage described as follows was acceptable as a specimen:

> The webpage contains a link to an
> online catalog, and, under the heading
> "Service and Support," toll free phone
> numbers and web links to customer
> service, technical support and "an
> instant link [via the "Go ValPro"
> button] to our Technical Resource
> Center."[3]

The current applicant's webpage specimen shows that the proposed mark is prominently displayed (and followed by a "TM" designation) directly above pictures of three meat

---

[3] The *Valenite* webpage, unlike the *Sones* webpage, did not include pricing information for particular goods. However, the applicant in *Valenite* explained that purchase of its goods "requires careful calculation and technical knowledge, so customers expect to purchase goods by contacting" the customer service group for pricing information and delivery scheduling, and also submitted a declaration stating that the toll-free numbers on the website "are now, and...have been, used to place orders for the goods." *In re Valenite*, 84 USPQ2d at 1348.

products.  Below the pictures is the following text:  "We believe you shouldn't have to settle for a product sheet or a 'me too' menu.  That's why we work with you to create truly custom beef, pork and poultry solutions that perform in your kitchen and on your menu.  Because at Quantum Foods, your success is our first priority."

The problem with applicant's specimen is that it does not contain any information normally associated with ordering products via the Internet or the telephone as in *Sones*, *Valenite* or *Dell*.  For example, there is no sales form, no pricing information, no offers to accept orders, and no special instructions for placing orders anywhere on the specimen.  That is, the webpage is simply a way to advertise and inform the public about the company and its goods; the webpage does not show an actual offer for sale of the goods identified in the application and the opportunity and means to complete an on-line purchase of any goods.  There is no ordering information and, in point of fact, it is not even clear what goods, if any, can be ordered from applicant.

It long has been held that mere advertising is not sufficient to show trademark use.  *See Powermatics, Inc. v. Globe Roofing Products Co.*, 341 F.2d 127, 144 USPQ 430, 432 (CCPA 1965) ("it being well settled that mere

advertising...do[es] not constitute technical trademark use"); *Land's End, Inc. v. Manbeck*, 797 F.Supp. 511, 24 USPQ2d 1314, 1316 (E.D. Va. 1992) ("Specimens are invalid for registration purposes only if they constitute mere advertising."); *In re MediaShare Corp.*, 43 USPQ2d 1304 (TTAB 1997); and *In re Shipley Co*. Inc., 230 USPQ 691 (TTAB 1986). *See also Avakoff v. Southern Pacific Company et al.*, 765 F.2d 1097, 226 USPQ 435, 436 (Fed. Cir. 1985). In the present case, applicant's webpage specimen is nothing more than mere advertising.

Applicant claims that "if prospective customers put the cursor over 'FOR FOODSERVICE,' a drop down menu appears which includes a 'contact us' link; and "[i]f you click on the 'contact us' link, you are routed to the customer service page which contains an email address and toll free number for contacting applicant's customer service department for, among other things, placing an order for the goods." We point out that the "contact us" link does not take the potential customer to an order form, rather it only goes to a webpage with applicant's email address and telephone number. *See In re Genitope Corp.*, 78 USPQ2d at 1822 ("[T]he company name, address and phone number that appears at the end of the web page indicates only location information about applicant; it does not constitute a means

Ser. No. 78960554

to order goods through the mail or by telephone, in the way that a catalog sales form provides a means for one to fill out a sales form or call in a purchase by phone.").

The simple fact that potential customers can move their cursor over "FOR FOODSERVICE" to get to a linked "contact us" page does not convert an ordinary advertising display into a point-of-sale display associated with the goods.  By definition, "advertising" means "to announce or praise [a product, service, etc.] in some public medium of communication to *induce people to buy or use it*."  The Random House Dictionary of the English Language (unabridged)(2d ed. 1987)(emphasis added).  We take judicial notice of this definition.  *University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co.*, 213 USPQ 594, 596 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).  Therefore, to be more than mere advertising, a point-of-sale display associated with the goods must do more than simply promote the goods and induce people to buy them; that is the purpose of advertising in general.  The specimen must be "calculated to consummate a sale."  *In re Bright of America, Inc.*, 205 USPQ 63, 71 (TTAB 1979).  *See also In re Osterberg*, 83 USPQ2d 1220, 1224 (TTAB 2007) (A "list of distributors and a link to their websites" was not sufficient to make the webpage a display associated with

11

the goods). In considering displays associated with the goods, the point-of-sale nature of the display has always been an important factor. *See In re Marriott*, 459 F.2d 525, 173 USPQ 799, 800 (CCPA 1972) (menu); *Land's End, Inc. v. Manbeck*, 24 USPQ2d at 1316 (catalog); and *In re Shipley Co. Inc.*, 230 USPQ at 694 (trade show booth).

Applicant's webpage specimen does not show a single way to contact applicant, let alone information about ordering goods from applicant; there are no offers to accept orders or special instructions on placing orders anywhere on the specimens. The specimen simply does not contain adequate information for placing orders for the goods. Applicant's webpage contains no actual information about applicant's goods and it is not clear how the goods would be ordered through the website, unlike the case with the webpage specimens in *Valenite* and *Dell*. Similarly, unlike the specimen in *Sones* that displayed "shopping cart" functionality for online ordering, applicant's webpage does not display any capability to buy the goods.

We recognize that the Federal Circuit in the *Sones* case called into question the three-part test for electronic specimens of use cited in the TMEP, that is, the specimen must include a picture of the goods, the mark must appear sufficiently near the picture, and the specimen must

12

include information necessary to order the goods. We also acknowledge the Federal Circuit's specific holding in *Sones* that a picture is not a mandatory requirement for a website-based specimen of use. However, we remain of the view that the requirement for inclusion of information necessary to order the goods is critical, just as the point-of-sale nature of a display (that is, it is placed where a sale can be consummated) is critical in the bricks-and-mortar environment, in determining whether a specimen is adequate to show trademark use. *In re Marriott*, 173 USPQ at 800; and *Land's End, Inc. v. Manbeck*, 24 USPQ2d at 1316. Webpage displays should not be treated any differently from point-of-sale displays in the physical world and, by the same token, webpage advertisements should not be treated any differently from print advertisements. If there is no way for a consumer, when visiting a webpage, to order the goods being promoted, then the use of a proposed mark in connection with the goods on the webpage is nothing more than advertising.

Accordingly, we conclude that applicant's specimens do not show use of PROVIDING PROTEIN AND MENU SOLUTIONS as a trademark for the applied-for goods.

**Decision:** The refusal to register is affirmed.