THIS OPINION IS A PRECEDENT OF THE TTAB

Mailed:
May 13, 2010
Bucher

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

In re Anpath Group, Inc.

_____

Serial No. 77004809

_____

Lauri S. Thompson of Greenberg Traurig, LLP for Anpath Group, Inc.

Dominic Fathy, Trademark Examining Attorney, Law Office 108 (Andrew Lawrence, Managing Attorney).

_____

Before Quinn, Hairston and Bucher, Administrative Trademark Judges.

Opinion by Bucher, Administrative Trademark Judge:

Anpath Group, Inc. seeks registration on the Principal Register of the mark **ANPATH** _(in standard character format)_ for "all purpose disinfectant cleaning preparations for household, commercial and industrial use" in International Class 5.[1]

---

[1]  Application Serial No. 77004809 was filed by EnviroSystems, Inc. on September 21, 2006 based upon applicant's allegation of a _bona fide_ intention to use the mark in commerce.  On May 6, 2008, this application was assigned to Anpath Group, Inc. according to the Assignment Division of the United States Patent and Trademark Office, at Reel 3772, Frame 0684.  The statement of use was filed on August 19, 2008.

The Trademark Examining Attorney refused registration on the ground that the proffered specimens are unacceptable as evidence of trademark use because they do not show the involved mark functioning as a trademark for the goods identified in the Notice of Allowance dated March 27, 2007. Trademark Act Sections 1, 2 and 45, 15 U.S.C. §§ 1051, 1052 and 1127.

After the Trademark Examining Attorney made the refusal final, applicant appealed to this Board. We affirm the refusal to register.

Applicant's original specimen shown below, identified as a "scanned pamphlet," was submitted on August 19, 2008 with applicant's Statement of Use:




When the Trademark Examining Attorney rejected the specimen on the basis that it was an advertisement for the goods, applicant argued that this pamphlet is provided to customers in conjunction with the product, and contains a toll-free telephone number for ordering product from applicant. After the final refusal, along with its Request for Reconsideration and a Notice of Appeal, applicant submitted a verified substitute specimen, shown at right, identified by applicant as "product ordering information."



- 3 -

### *Statute and Rules*

We turn first to review the statutory definition of "use in commerce."

> ***Use in commerce****.*  The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark.  For purposes of this chapter, a mark shall be deemed to be in use in commerce—
>
> (1) on goods when —-
>
>   (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
>
>   (B) the goods are sold or transported in commerce, …

Trademark Act § 45 (15 U.S.C. § 1127).  The statute and attendant regulations[2] focus on actual affixation of the mark (e.g., a close physical association - either on the goods or on tags, labels and/or containers for the goods).

---

[2]  **SPECIMENS**
  **§ 2.56 Specimens.**
  (a) An application under section 1(a) of the Act, an amendment to allege use under § 2.76, and a statement of use under § 2.88 must each include one specimen showing the mark as used on or in connection with the goods, or in the sale or advertising of the services in commerce.
  (b)(1) A trademark specimen is a label, tag, or container for the goods, or a display associated with the goods.  The Office may accept another document related to the goods or the sale of the goods when it is impracticable to place the mark on the goods, packaging for the goods, or displays associated with the goods.
37 C.F.R. **§** 2.56.

In addition to the requirement that a trademark for goods performs its function of identifying the source of the goods to the consuming public, the rules also require that the specimen of use demonstrates a sufficient association between the trademark and the identified goods. *In re Bright of America, Inc.*, 205 USPQ 63, 71 (TTAB 1979). Applicant's "pamphlet" and its "product ordering information" do not purport to show affixation of the mark on "a label, tag, or container for the goods."  37 C.F.R. § 2.56.  At no point does applicant argue that these proffered specimens function as labels affixed to industrial containers for the goods or that they are part of shipping documents that accompany the goods.  *In re Ultraflight Inc.*, 221 USPQ 903 (TTAB 1984) [first page of the manual having assembly instructions for hang-glider contained the mark, and was deemed to be acceptable as affixation of the mark to the goods themselves].

Yet as applicant points out, the statutory definition is expanded beyond affixation, and includes "displays associated" with the goods, *In re Marriott,* 459 F.2d 525, 173 USPQ 799 (CCPA 1972), and applicant argues that its specimens should be treated as such.  As discussed below, decisions under this Lanham Act provision have for decades found "point-of-purchase" or "point-of-sale" displays to be

valid specimens showing use of a mark in commerce if "associated with the goods."

Nonetheless, in view of the legislative history leading up to the enactment of the Lanham Act, and the case law interpreting the Act, a clear "line of demarcation" has been drawn between mere advertising materials, which have been found unacceptable as specimens showing use of a mark for goods, and point-of-purchase promotional materials which have been found acceptable as a display associated with the goods. For example, in *Avakoff v. Southern Pacific Company et al.*, 764 F.2d 1097, 226 USPQ 435 (Fed. Cir. 1985), the Court found that Avakoff's advertising in the nature of form letter solicitations sent to retailers about its program are mere advertisements and this use of the purported mark apart from the goods does not constitute trademark use for those goods]. It has long been held that specimens are invalid for registration purposes if they constitute mere advertising. *See Powermatics, Inc. v. Globe Roofing Products Co., Inc.*, 341 F.2d 127, 144 USPQ 430 (CCPA 1965) [mere advertising and documentary use of a notation apart from the goods do not constitute technical trademark use]; and *In re Shipley Co.*, 230 USPQ 691, 694 (TTAB 1986).

On which side of this line of demarcation these specimens fall is the point of disagreement herein between applicant and the Trademark Examining Attorney.

In response to the initial rejection of the original EnviroTru™ pamphlet, applicant contended rather obliquely that "[t]he pamphet [sic], used as the specimen, is provided in conjunction with the product." As noted above, applicant does not contend that the initial specimen serves as a label for the product, or that this accompanies the goods in a manner analogous to an insert packaged with the container. Nor does applicant make the argument that its proffered specimens are presented in connection with the goods at a trade show exhibit. Without acquiescing in the position of the Trademark Examining Attorney on the original specimen, applicant submitted a substitute specimen, and then argues in its brief that it "has submitted a *flyer* that is either mailed, emailed or left with a customer by a sales representative …. " [*emphasis* added] Accepting that as true, it still begs the question of whether either specimen is truly a "display associated with the goods."

Applicant correctly identifies the critical issue as whether either of its specimens is in the nature of a point-of-sale device. *See In re Sones*, 590 F.3d 1282, 93 USPQ2d 1118, 1124 (Fed. Cir. 2009). Applicant answers that

question in the affirmative, arguing that these specimens are the mechanism though which purchases of its **ANPATH** goods can be made.

By contrast, the Trademark Examining Attorney takes the position that applicant's pamphlet and "flyer," despite the prominent inclusion of a toll-free telephone number, contain insufficient information for the prospective consumer actually to order the goods; consequently, the Trademark Examining Attorney maintains that the specimens are mere advertising.

We begin our analysis with a reminder that "[t]he determination of whether a specimen is mere advertising or a display associated with the goods is a factual question amenable to proof." *Shipley*, 230 USPQ at 694 [trade booth did promotional work and served as a sales counter]; and *In re Hydron Technologies Inc*., 51 USPQ2d 1531 (TTAB 1999) [in half-hour infomercial for the QVC buying channel, the mark/slogan was "proximate" to display of images of the involved goods]. The predecessor to our current reviewing Court made it clear that the statute does not require "close physical association" between the mark and finished goods. *Marriott,* 173 USPQ at 800 [menu item **TEEN TWIST** was a display associated with applicant's sandwich].

Accordingly, we view the entire file before us, including both proffered specimens (e.g., the original "pamphlet" and the substitute "product ordering information" or "flyer"), in reaching a determination herein. We seek to view the specimens in the context of the actual marketplace. *In re Dell Inc.*, 71 USPQ2d 1725, 1727 (TTAB 2004); and *Hydron*, 51 USPQ2d at 1534.

Applicant argues that unlike the facts of *In re Schiapparelli Searle,* 26 USPQ2d 1520 (TTAB 1993) [fact sheet brochures held not to qualify as a catalog under the *Land's End*[3] criteria], this is not the situation in this case, namely, that "its specimen does show its mark near a description of the product, and does include information as to how to order the goods." Applicant's brief, at 2-3. However, we find that applicant's "pamphlet" and its "product ordering information" do not have the many characteristics of the *Land's End* catalogue (e.g., detailed descriptions and pictures having trademarks displayed prominently nearby, specifications and options, prices, colors, sizes, a detailed order form, etc.) and hence are not clearly analogous to printed material from which the goods are ordered.

---

[3] *Land's End, Inc. v. Manbeck*, 797 F. Supp. 511, 24 USPQ2d 1314 (E.D. Va. 1992).

Applicant also analogizes its "pamphlet" and "product ordering information" to digital displays of product information on a website. However, web pages have been found to be acceptable as displays associated with the goods where the screen prints of web pages submitted as specimens of use contain adequate information for routinely and easily placing orders for the goods via the Internet. *Dell*, 71 USPQ2d at 1727; *In re Valenite Inc.*, 84 USPQ2d 1346, 1348 (TTAB 2007); and *In re Quantum Foods, Inc.*, 94 USPQ2d 1375 (TTAB 2010). In the case of both the virtual, online world and the physical world of a catalogue, the point-of-sale nature of the display is the critical threshold issue that must be answered in the affirmative.

Factually, we need to ask whether the purported point-of-sale display provides the potential purchaser with the information normally associated with ordering products of that kind. This has long been an important factor to the Board and its reviewing Courts. *Marriott*, 173 USPQ at 800; *Land's End*, 24 USPQ2d at 1316; and *Shipley*, 230 USPQ at 693-94.

Turning then to applicant's substitute flyer, a generous portion of the text is devoted to touting the benefits of these goods. What is missing is a sales form, or ordering information anywhere on the specimen. In point

of fact, the potential purchaser has no actual information about the minimum quantities of applicant's goods one may order, how much the goods cost, how one might pay for the products, how the large containers of liquid would be shipped, etc. *MediaShare Corp.*, 43 USPQ2d at 1306-07. Our hypothetical, potential customer, after reviewing applicant's specimen with its limited ordering information, is simply not yet at the point of purchase, and would contact applicant to obtain preliminary information necessary to order the goods; it is only after obtaining such information, which is not provided on the specimen, that the purchaser could actually place an order with applicant's sales office.

Contrast the limited nature of the information available to this prospective customer upon reviewing applicant's specimen with the ordinary consumer walking down the aisle of the local brick-and-mortar retail store. In terms of information and interaction with the product, the in-store consumer has probably been able to do some product comparisons, has handled the goods, had the opportunity to learn the details from packaging, labeling and/or a shelf-talker, before asking questions of the clerk at the check-out register.

Neither is our potential customer of applicant holding a detailed catalogue with an equally-detailed order form to be mailed, faxed or called-in to the vendor.

Finally, this is very different from those cases involving online purchasing in which specimens of web pages have been found acceptable.  Here, our hypothetical purchaser is not viewing an interactive computer screen having information about the product (e.g., with the price of various quantities, options for shipping and handling, how the costs of the transaction are being paid, etc.), with the option of completing the transaction by clicking on items to add them to a shopping cart.

The specimens herein simply do not contain adequate information for making a decision to purchase the goods and placing an order, and hence, we conclude that applicant's specimens are nothing more than mere advertisements that do not show use of **ANPATH** as a trademark for the goods.

We find that these specimens are promotional pieces of literature primarily designed to tout the benefits of a product.  We recognize that they list the URL of applicant's website and/or a telephone number for contacting applicant's sales representatives/ordering personnel; however, this level of information does not create the same point-of-sale situation as a detailed catalogue capable of allowing a

consumer to consummate a physical order, or a detailed web page, or even the same as a situation where there is the option of placing an order via telephone based upon detailed information from the proffered specimen.

Like the original specimen for EnviroTru, applicant's substitute specimen for SurfaceTru does contain the following notation towards the bottom of the page:

For SurfaceTru™ ordering information call: 1-800-374-0017

Much of the argument contained in applicant's main brief and reply brief and in the Trademark Examining Attorney's brief focused on these substitute specimens. As noted earlier, applicant argues that it "has submitted a flyer that is either mailed, emailed or left with a customer by a sales representative … ." According to applicant, its sales representatives use this flyer because it promotes applicant's disinfectants and cleaners, and prompts inquiries from potential customers. Applicant argues that this flyer includes information as to how to order the product. We do not find that level of information sufficient. We find that the mere listing of the URL of a website[4] or a telephone number for the sales office cannot

---

[4]    *In re Osterberg*, 83 USPQ2d 1220, 1224 (TTAB 2007) [A listing of "where to buy" websites is not sufficient to make the originating web page a display associated with the goods].

turn what is otherwise an ordinary advertisement into a point-of-sale display, into a "display associated with the goods," and hence, into a valid specimen showing trademark use under the Lanham Act.

*Decision*:  The refusal to register under Sections 1, 2 and 45 of the Lanham Act is hereby affirmed.