THIS OPINION IS
NOT A PRECEDENT OF
THE T.T.A.B.

Mailed: April 19, 2012

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

In re Azteca Systems, Inc.

_____

Serial No. 85063769

_____

A. John Pate of Pate Baird for Azteca Systems, Inc.

Khanh M. Le, Trademark Examining Attorney, Law Office 113 (Odette Bonnet, Managing Attorney).

_____

Before Holtzman, Zervas and Lykos, Administrative Trademark Judges.

Opinion by Zervas, Administrative Trademark Judge:

On June 15, 2010, Azteca Systems, Inc. ("applicant") filed an application for registration of the mark



on the Principal Register under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), for "computer software for management of public works and utilities assets" in International Class 9. Applicant disclaimed the term GIS,

which, according to the first Office action, is an abbreviation for "geographic information system."

The examining attorney issued a final Office action in which she found the substitute specimen filed on October 14, 2010 unacceptable under Trademark Act §§ 1 and 45, 15 U.S.C. §§ 1051 and 1127. The substitute specimen consists of a first webpage (which was the original specimen) with information about the goods and a second webpage containing contact information. Specifically, the examining attorney states with regard to the first webpage that "the textual description of the goods does not associate the mark with the goods."[1]

The first page of the substitute specimen (depicted below) contains a description of the goods, the mark and a "contact" link. The second page of the substitute specimen is the "contact" page, which contains information on contacting applicant (including for "Sales and Marketing Information"), but not a description or depiction of the goods. Because the second page does not include a description or a depiction of the goods and hence does not associate the mark with the goods, the only issue on appeal

---

[1] The examining attorney did not repeat, either in her denial of the request for reconsideration or in her brief, her refusal on the basis that the substitute specimen "does not contain the necessary information to order the goods." We therefore find that the examining attorney waived this basis for refusal.

is whether the first webpage is a display associated with the goods which demonstrates an association of the applied-for mark with the goods.



Applicant's mark appears in the lower left-hand, bottom corner of the first webpage.  Towards the top of the

webpage, applicant provides a description of its software

under the heading "Cityworks":

> Cityworks® is the only GIS-centric Asset
> Management System available.  Created especially
> for organizations facing the challenge of
> managing capital assets and infrastructure,
> Cityworks is uniquely designed to fully leverage
> your investment in GIS without costly duplication
> of data, risky synchronization or integration.
> Coupled with ESRI's ArcGIS software, Cityworks,
> provides a complete solution for managing your
> assets, maintenance and property.

According to the examining attorney;

> As used on the webpage specimen, the textual
> description of the software clearly references
> the mark "CITYWORKS" and not the mark "GIS
> EMPOWERED BY CITYWORKS" written in a rectangular
> box.  Although applicant's mark is located in the
> lower left-hand corner of the webpage, the
> textual description of the goods contains no
> association with the mark in the application.
> Contrary to applicant's assertion, an association
> between the mark and the goods is not established
> by mere placement of the mark on the same
> webpage.

Brief at unnumbered pp. 4 – 5.  Applicant disagrees,

stating:

> The Applicant's mark appears on the same web
> page as the description of goods.  The only way
> to get the mark nearer the description of goods
> is to place the mark right next to the
> description.  That is not the requirement.  The
> requirement is that the mark be sufficiently near
> the description to be associated with the goods.
>
> The mark does not have to "identify" the
> goods, it only needs to be associated with the
> goods.  Here, the mark is on the same web page as
> the goods, viewed within about the same proximity
> to the description of the goods as another mark

> (Cityworks®) associated with the goods, and including a "TM" symbol to notify its use as a trademark.
>
> The mark also contains portions of text used in the description, helping to further associate the mark with the goods. Thus, the mark is tied to the description of goods by the content common to both. This satisfies the requirement that the mark be near enough the description of good so as to associate the mark with the goods.

Brief at 5. In its reply brief, applicant points out that only one product is described on the webpage (just as in *In re Dell Inc*., 71 USPQ2d 1725 (TTAB 2004), discussed, *infra*); and that "the textual description of the goods and the mark itself both actually use the terms 'GIS' and 'Cityworks.' Moreover, the textual description discusses 'organizing' and 'fully leveraging.' These are virtual synonyms for the term 'empowering.' Thus, the textual description provides association with the mark by common usage of equivalent terms." Reply at 3 – 4.

The Federal Circuit, in the case of *In re Sones*, 590 F.3d 1282, 93 USPQ2d 1118, 1123 (Fed. Cir. 2009), stated, "the test for an acceptable website-based specimen, just as any other specimen, is simply that it must in some way evince that the mark is 'associated' with the goods and serves as an indicator of source." See also *In re Bright of America, Inc*., 205 USPQ 63 (TTAB 1979) (specimen of use

must demonstrate a sufficient association between the trademark and the identified goods).

In *In re Dell*, 71 USPQ2d at 172, the Board stated, "a website page which displays a product, and provides a means of ordering the product, can constitute a 'display associated with the goods,' as long as the mark appears on the webpage in a manner in which the mark is associated with the goods."  The Board reasoned:

> In today's commercial environment, we must recognize that the banners, shelf-talkers and other point of purchase displays that are associated with brick and mortar stores are not feasible for the on-line shopping setting.  Web pages which display goods and their trademarks and provide for the on-line ordering of such goods are, in fact, electronic displays which are associated with the goods.  Such uses are not merely advertising, because in addition to showing the goods and the features of the goods, they provide a link for ordering the goods.  In effect, the website is an electronic retail store, and the webpage is a shelf-talker or banner which encourages the consumer to buy the product.  A consumer using the link on the webpage to purchase the goods is the equivalent of a consumer seeing a shelf-talker and taking the item to the cashier in a brick and mortar store to purchase it.

Whether a specimen is a display associated with the goods is a question of fact.  *Land's End Inc. v. Manbeck*, 797 F.Supp. 311, 24 USPQ2d 1314 (E.D. Va. 1992); *In re Hydron Technologies Inc*., 51 USPQ2d 1531 (TTAB 1999).

We find that the mark fails to create an association with the goods and fails to serve as an indicator of source of applicant's goods as described in the webpage. First, the mark is distant from the description of the software, and is separated from the description by more than fifteen lines of text concerning marginally-related topics such as a customer's testimonial, applicant's philosophy regarding customer relations and information on what applicant's software has done for the City of Long Beach. Second, there are a number of different logos and word marks on the webpage, which are not specifically for applicant's goods. The webpage includes applicant's house mark; the designation "Empowering GIS for Infrastructure, Assets, Permits and Licensing" (followed by "TM"); the primary mark for the goods "Cityworks" (followed by the registration symbol); a logo for ESRI Worldwide Partner of the Year; and a logo at the bottom of the webpage, on the same level as the applied-for mark, for NAGCS. The multitude of marks on the webpage tends to distract potential purchasers from associating applicant's mark with the description of applicant's goods.[2] Third, applicant has included on the left side of the webpage links to articles and news

---

[2] We are not suggesting that only one mark must be displayed on a specimen for it to be acceptable. In this case, the plethora of

7

concerning applicant's business (not limited to applicant's Cityworks management system software), "events" such as congresses and conferences and news about users of applicant's Cityworks software. All of the above distract the potential purchaser viewing the webpage from associating applicant's applied-for mark with the described goods.

In addition, we are not persuaded by applicant's arguments supporting its specimen. That the webpage contains a description of the goods does not mandate acceptance of the specimen; an association must be made between the mark and the goods. *In re Dell, supra*. Additionally, the potential for an association between the mark and the goods as described on the webpage due to similar wording in the mark and the description is reduced due to (i) the other material on the webpage involving topics unrelated to or marginally related to the goods, (ii) the length of the description of the Cityworks software near the top of the webpage (which diminishes any association due to the shared wording), and (iii) the positioning of the mark distant from the text. These elements distract the potential purchaser from associating

---

marks on the specimen diminishes the potential for prospective purchasers to make an association of the mark with the goods.

the mark with the description of the goods.  Further, applicant's reliance on *In re Marriott Corp*., 459 F.2d 525, 173 USPQ 799, 800 (CCPA 1972), as support that "point of sale materials have a been found acceptable when the mark is not displayed in close proximity to the description of goods" is disingenuous; the Court also stated, which applicant did not point out, that "association with the goods" is a relative term amenable to proof.  Under some circumstances, it may mean actual contact, or proximity, or contiguity."

In view of the foregoing, we find that the first webpage offered as a part of applicant's substitute specimen of use fails to exhibit an association between applicant's goods as described on the webpage and the applied-for mark appearing at the bottom of the same webpage.

**Decision**:  The refusal to register under Sections 1 and 45 of the Trademark Act with respect to the substitute specimen is affirmed.

9