THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed: January 29, 2013

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Gulf Coast Nutritionals, Inc.*

_____

Serial No. 77980412

_____

Jennifer L. Whitelaw, Esq. for Gulf Coast Nutritionals, Inc.

Jennifer H. Dixon, Trademark Examining Attorney, Law Office 110 (Chris A. F. Pedersen, Managing Attorney).

_____

Before Holtzman, Mermelstein, and Gorowitz, Administrative Trademark Judges.

Opinion by Gorowitz, Administrative Trademark Judge:

Applicant has appealed the examining attorney's refusal to register its mark PLAQUE-ZAPPER for the following goods in Class 31:

> pet products, namely, edible pet treats, pet food and pet beverages.

The basis for the final refusal was that the specimen submitted did not show use in connection with the listed goods. As evidence of use of the mark in connection with both classes of goods, applicant submitted the specimen set forth below, which is described as "packaging for goods."







The sole issue in this appeal is whether the specimen, consisting of the box containing applicant's goods, shows use of the mark on the identified "edible pet treats, pet food and pet beverages." As a threshold matter, we note that there is nothing on the specimen that indicates the goods are pet food or pet beverages. Nor does applicant contend that the specimen shows use of the mark on pet food or pet beverages. Thus, the only remaining question is whether the specimen shows use of the mark on "pet treats."

As the Court held in *In re Bose Corp.*, 546 F.2d 893, 192 USPQ 213, 216 (CCPA 1976) case:

> An important function of specimens in a trademark application is, manifestly, to enable the PTO to verify the statements made in the application regarding trademark use. In this regard, the manner in which an applicant has employed the asserted mark, as evidenced by the specimens of record, must be carefully considered in determining whether the asserted mark has been used as a trademark with respect to the **goods named in the application.**

192 USPQ at 216 (emphasis added).

There is no dictionary definition of a "pet treat" in the record. Both the examining attorney and the applicant have relied on definitions of "treat" from the Dictionary.com website, at dictionary.reference.com[1] to describe a "pet treat." The examining attorney relies on definitions of "treat" as "anything that affords particular pleasure or enjoyment"[2] and she further asserts that "pet treats" are

---

[1] This definition was an attachment to Applicant's Response dated April 13, 2011.

[2] Definition No. 13 from the Dictionary.com website (dictionary.reference.com/browse/treat)

4

"typically edible goods that do have flavor...." Examiner's Statement, unnumbered page 12. In support of the latter meaning, the examining attorney introduced pages from the "Only Natural Pet Store" website (onlynaturalpet.com), an online store that sells natural pet products. On the "Only Natural Pet Store" site, pet treats are described as "healthy, high quality pet treats [-] all natural and healthy treats for cats and dogs available in [a] variety of chews, biscuits, bones, crunches, and moist goodies" (capitalization omitted). December 8, 2011 Denial of Request for Reconsideration, Attachment 1.

Applicant takes the position that its goods qualify as pet treats, based on its chosen definition of what a treat is: "entertainment, food, drink, etc. given by way of compliment or as an expression of friendly regard."[3] Appeal Brief, page 5. However, there is no extrinsic evidence that this is a commonly recognized meaning of "pet treats."

Further, even under applicant's asserted definition, applicant's explanation of its goods is not supported by statements on the specimen, which reflect use of the mark PLAQUE-ZAPPER as a dental healthcare product, not a "pet treat." All of the information on the specimen describes a dental healthcare product for maintaining a pet's dental health. This is not the common understanding or dictionary definition of what is considered a pet treat.

---

[3] Definition No. 12 from the Dictionary.com website
(www.dictionary.reference.com/browse/treat)

According to the specimen, the product on which the mark is actually used is "[f]or use by Dogs & Cats. Recommended to support dental health and control plaque, tartar and bad breath." Product descriptions include:

> [N]aturally available enzymes that are activated by mouth saliva. As your pets drink from their water bowl Ark's *Plaque*-Zapper…Zaps harmful mouth bacteria and our clinically tested enzymes stop plaque from sticking to teeth.

(Left side of box);

> Odorless•Colorless•Tasteless Will not Change Pet's Drinking or Eating Habits.

(Front of box); and

> ENDS…Hand brushing, wipes, sprays, gels, paste and jumpy animals. GOODBYE…Plaque, tartar, bad breath and stained teeth. HELLO…Pet's Healthy Teeth and Sweet Breath.

(Top of box).

Under any reasonable interpretation of the language used on the specimen, specifically, that the product eliminates "plaque, tartar, bad breath and stained teeth," replaces manual dental care in animals (hand brushing, wipes, sprays, gels and pastes), consists of "naturally available enzymes," and is odorless and tasteless, a prospective purchaser would conclude that the product is a healthcare product and not a treat. This conclusion is reinforced by the instructions and warnings on the specimen, each of which, while applicable to a veterinary product, would not be applicable to what is commonly understood to be a treat:

-**Recommended Use:** Empty packet in bowl of fresh water.

-**Therapeutic:** 2x daily for 4-6 weeks.

-**Maintenance:** Use 1x daily – 3x per week

Fizz lasts 3-5 seconds. Enzymes remain active for 6-8 hours.

-**Cautions:** If animal's condition worsens or does not improve, stop product administration and consult your veterinarian.

-**Warnings:** For Dogs & Cats. Keep out of reach of children and other animals. In case of accidental overdose contact a health professional immediately.

The average person looking at the specimen would not consider the goods to be "pet treats." The purpose of the identification of goods is to provide the general population, including consumers and members of the relevant industry, with an understandable description of the goods, which is done by using the common commercial name for the goods. *In re Sones,* 590 F.3d 1282, 93 USPQ2d 1118, 1124 (Fed. Cir. 2009). *see also In re Thor Tech, Inc.,* 85 USPQ2d 1474, 1477 (TTAB 2007) ("park trailer" held to be an acceptable identification, where the applicant's evidence showed that it is a term of art generally understood by those in the industry and by consumers as a designation for a type of recreational vehicle).

The term "pet treats" is commonly used to identify an edible item that is for pleasure or enjoyment. For example, "Only Natural Pet Store" uses the term "pet treats" in connection with edible items in the form of "chews, biscuits, bones, crunches and moist goodies," and "EntirelyPets" (entirelypets.com), describes "pet

treats" as "yummy." December 8, 2011, Denial of Request for Reconsideration, Attachment 10. "EntirelyPets" also describes the use of pet treats. "[They] can help keep your dog or cat happy and healthy. Playing not only is fun but gives both you and your pet great exercise. You can also show you care by rewarding good behavior with pet treats like Joint Treats, Greenies, and Trim Treats"; and they are "great for training your pet as well." Thus, although applicant would describe a pet treat broadly as "food, drink, etc. given by way of compliment," we do not see how an "odorless, colorless, tasteless" product could be expected to have such an effect. Applicant's product simply does not fit within the commonly understood meaning of a pet treat.[4]

The evidence shows that "pet treats" include items such as "chews, biscuits, bones, crunches, and moist goodies"; however, neither applicant's PLAQUE-ZAPPER product nor any similar product discussed in the record is categorized as a "pet treat." On the "Only Natural Pet Store" site, applicant's product is offered in the Grooming/Hygiene Department (December 8, 2011, Denial of Request for Reconsideration, Attachment 6) and on the EntirelyPets site, applicant's product is

---

[4] We note that there is a distinction for classification purposes between products that are primarily for feeding an animal, including pet food that brings pleasure or enjoyment, which are classified in Class 31, and products that are dietary pet supplements and pharmaceutical products, which are in the form of treats. The dietary supplements and pharmaceutical products are classified in Class 5.

We acknowledge, of course, that pet treats can be healthy, and that they can be advertised as such. Further, it is possible that a single item could be identified and classified as *both* a pet treat in Class 31 *and* a pharmaceutical or dietary supplement in Class 5. *In re International Salt Co.*, 166 USPQ 215, 215-16 (TTAB 1970); TMEP § 1401.07 (3d ed. Rev. June 2012). But that possibility does not mean that all pharmaceuticals or dietary supplements are pet treats or vice versa. Regardless of how the products are classified, applicant's specimens do not show use of the mark on pet treats.

offered under "dental products" as a "dental additive." December 8, 2011, Denial of Request for Reconsideration, Attachment 15. This evidence suggests that purveyors of pet products consider applicant's goods to be a veterinary dental or health care product, not a "pet treat." Likewise, purchasers of pet products — the relevant consumers in this case — are accustomed to seeing applicant's goods categorized as and sold with other veterinary health or dental products, and not as "pet treats."

Since there is nothing on the specimen to indicate that applicant's PLAQUE-ZAPPER product is a "pet treat," we find that the specimen does not show use of the mark PLAQUE-ZAPPER in connection with "edible pet treats, pet food and pet beverages." As such, registration was properly refused under Sections 1 and 45 of the Trademark Act, 15 USC §§ 1051, 1027, on the ground that the specimen does not show use of the mark in connection with the Class 31 goods identified in the application.

Decision:  The refusal to register is affirmed.