# United States Court of Appeals
# for the Federal Circuit

---

**IN RE: SINY CORP.,**
*Appellant*

---

2018-1077

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 86754400.

---

NONPRECEDENTIAL OPINION ISSUED: January 14, 2019
PRECEDENTIAL OPINION ISSUED: April 10, 2019*

---

DANIEL KATTMAN, Reinhart Boerner Van Deuren s.c., Milwaukee, WI, for appellant. Also represented by HEIDI R. THOLE.

THOMAS W. KRAUSE, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Andrei Iancu. Also represented by CHRISTINA J. HIEBER, MARY BETH WALKER.

---

\* This opinion is being issued as a precedential opinion pursuant to a request by the U.S. Patent and Trademark Office under Fed. Cir. R. 32.1(e).

Before PROST, *Chief Judge,* LOURIE and STOLL,
*Circuit Judges.*

PROST, *Chief Judge.*

Siny Corp. ("Siny") appeals a decision of the Trademark Trial and Appeal Board ("Board") affirming the examining attorney's refusal to register Siny's proposed mark. We affirm.

I

Siny filed trademark application Serial No. 86754400 on September 11, 2015, seeking to register the mark CASALANA in standard characters for "Knit pile fabric made with wool for use as a textile in the manufacture of outerwear, gloves, apparel, and accessories" based on use in commerce under Section 1(a) of the Lanham Act, 15 U.S.C. § 1051(a). Siny also submitted a specimen consisting of a webpage printout, which purported to show the mark in use in commerce for the goods.

The examining attorney initially refused registration because the specimen "appear[ed] to be mere advertising material" and thus failed to show the requisite use in commerce for the goods. J.A. 74. The examining attorney noted in particular that the specimen did not include a means for ordering the goods. In response, Siny submitted a substitute specimen (the "Webpage Specimen"), which was the same webpage but with additional text showing. The Webpage Specimen is reproduced below:

Home | Our Fabrics | Pile Features & Benefits | Fabrics Made from Fiber | How Pile is Made | Contact Us

# GLENOIT FABRICS

**Glenoit Fabrics is affiliated with Monterey Mills**



## Masters of Comfort Knit Pile Fabrics

Founded over 50 years ago in Beloit, Wisconsin, Glenoit Fabrics is the largest manufacturer of sliver knit pile fabrics in North America. Together with its flexible workforce and short turnaround period, it supplies a major share of the comfort and performance pile fabrics produced in the world.

Glenoit Fabrics takes pride in partnering with each manufacturing customer to develop and supply the right fabric with "just in time" production for the right end product. Offering services rarely found elsewhere, a strong network of design and engineering facilities at both Glenoit Fabrics and Monterey Mills produces unique comfort knit pile fabrics made with the finest fibers that meet exacting specifications. Glenoit Fabrics also provides assistance with cutting and sewing and other production and finishing services, to aid further in the success of the final end product should customers require them.

A sampling of Glenoit Fabrics' superb comfort pile fabrics

## 'Fabrics Made from Fiber'

Glenoit Fabrics' comfort knit pile products are described as 'Fabrics Made from Fiber' because of the process by which they are made.

Glenoit Fabrics' special sliver (sly-ver) knitting process locks individual fibers directly into a lightweight knit backing allowing each fiber to stand upright, free from the backing to form the soft pile on the face of the fabric. This makes Glenoit Fabrics' comfort pile fabrics softer, warmer, more drapable and more resilient than fabrics made from yarns.

## Features and Benefits of Glenoit Fabrics' Comfort Knit Pile

**Glenoit Fabrics' sliver knit pile is made like no other fabric** (For more information on how Glenoit Fabrics' comfort knit fabrics are made, go to 'Fabrics Made from Fiber'.

Because Glenoit Fabrics' special sliver (sly-ver) knitting process locks individual fibers directly into a lightweight knit backing allowing each fiber to stand upright, free from the backing, this special construction creates a fabric with extraordinary performance and tactile appeal. 'Fabrics Made from Fiber' offer:

- **Light Weight** Not twisted into dense yarns, pile's fibers along with the fine denier filament backing yarn, yield a fabric that seems nearly weightless for its volume.
- **Multi-season comfort** The billions of tiny air pockets created between pile's fibers act as tiny air conditioners to maintain an even temperature. The result is multi-season comfort.
- **Easy Care** With the exception of Glenoit Fabrics' artful faux fur styles, pile's non-shrink construction and select fibers make it washable.
- **Non-shrink** Because of the stability of its knit backing yarn, pile's shrinkage is virtually nonexistent. Though individual fibers may shrink slightly, there is no effect on the fabric itself.
- **Soft, Drapability** The flexibility of pile's filament knit backing yarns and lightweight loose fibers, delivers an appealing softness, drape and hand every time.
- **A nearly endless array of textures and patterns** Patterning from computerized jacquard knitting machines and expert finishing techniques make Glenoit Fabrics' totally unique.
- **Rich colors** Glenoit Fabrics' fibers are pre-dyed before construction (environmentally advantageous over yarn or fabric dying). They can then be blended for an exceptional depth of color and subtle variations within one fabric and pattern.

## Some Of Our Most Popular Fabrics:

     

SunDancer    Cascade    Chantilly    Marrakech    Berber by    Casalana



J.A. 61–62. Siny responded to the refusal by arguing that the Webpage Specimen included a means to purchase the goods—namely, the text "For sales information:" followed by a phone number and email address.

The examining attorney rejected that argument in a final refusal. He found that the cited text alone was

insufficient for consumers to make a purchase; rather, it only indicated how consumers could obtain more information necessary to make a purchase. The examining attorney noted the absence of what he considered necessary ordering information, such as minimum quantities, cost, payment options, or shipping information. He therefore maintained the refusal based on the submitted specimen's failure to show the requisite use in commerce for the goods.

Siny appealed the refusal to the Board. In a split decision, the Board affirmed. The Board initially noted that for a mark to be in use in commerce on goods, it may be "placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto." J.A. 2 (quoting 15 U.S.C. § 1127). The Board observed that the Webpage Specimen was not an example of the mark being placed on the goods or their containers, tags, or labels. Rather, Siny contended that the Webpage Specimen constituted a "display associated with the goods." J.A. 2. The Board cited precedent as supporting a general requirement that for such a display to show the requisite use in commerce, it must be a "point of sale" display and not mere advertising. J.A. 2–4.

The Board then considered the Webpage Specimen in detail. It found that the Webpage Specimen lacked much of the information the Board would consider essential to a purchasing decision—e.g., a price (or even a range of prices) for the goods, the minimum quantities one may order, accepted methods of payment, or how the goods would be shipped. J.A. 8. The Board appreciated Siny's contention that because the goods were industrial materials for use by customers in manufacture, the ultimate sales transaction may have to involve some assistance from Siny's sales personnel. J.A. 9; *see* J.A. 3. Yet it found that, "while some details must be worked out by telephone, if virtually all important aspects of the transaction must be determined from information extraneous to the web page, then the web page is not a point of sale." J.A. 9. The Board

added that in cases where the goods are technical and specialized and the applicant and examining attorney disagree on the point-of-sale nature of a submitted webpage specimen, "the applicant would be well advised to provide the examining attorney with additional evidence and information regarding the manner in which purchases are actually made through the webpage." J.A. 9 (noting further that "[a]ttorney argument is not a substitute for reliable documentation of how sales actually are made . . . and verified statements from knowledgeable personnel as to what happens and how"). The Board ultimately affirmed the refusal because it found that the Webpage Specimen was not a display associated with the goods within the meaning of the Lanham Act. J.A. 10. The dissenter found that the Webpage Specimen was a valid "point of sale" display. J.A. 10–12.

Siny appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## II

We review the Board's legal conclusions de novo and its factual findings for substantial evidence. *E.g.*, *Royal Crown Co. v. The Coca-Cola Co.*, 892 F.3d 1358, 1364–65 (Fed. Cir. 2018). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1365 (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).

The Lanham Act provides for registration of a mark based on use of the mark in commerce. 15 U.S.C. § 1051(a). A mark is deemed in use in commerce on goods when, among other things, "it is placed in any manner on the goods or their containers *or the displays associated therewith* or on the tags or labels affixed thereto." *Id.* § 1127 (emphasis added). The U.S. Patent and Trademark Office (PTO) requires an applicant to submit a specimen of use "showing the mark as used on or in connection with the goods." *In re Sones*, 590 F.3d 1282, 1284 (Fed. Cir. 2009)

(quoting 37 C.F.R. § 2.56(a)); *see* 15 U.S.C. § 1051(a)(1) (requiring for use-based registration "such number of specimens or facsimiles of the mark as used as may be required by the Director").

The issue on appeal concerns whether the Webpage Specimen qualifies as a display associated with the goods under the Lanham Act. Mere advertising is not enough to qualify as such a display. *See Powermatics, Inc. v. Globe Roofing Prods. Co.*, 341 F.2d 127, 130 (CCPA 1965) ("[I]t [is] well settled that mere advertising and documentary use of a notation apart from the goods do not constitute technical trademark use."); *see also Avakoff v. S. Pac. Co.*, 765 F.2d 1097, 1098 (Fed. Cir. 1985); *Lands' End, Inc. v. Manback*, 797 F. Supp. 511, 513 (E.D. Va. 1992). In determining whether a specimen qualifies as a display associated with the goods, one important consideration is whether the display is at a point-of-sale location. *See In re Sones*, 590 F.3d at 1289 (identifying the point-of-sale nature of a display as a relevant consideration); *In re Marriott Corp.*, 459 F.2d 525, 527 (CCPA 1972) (likening the menus at issue to point-of-sale counter and window displays previously found acceptable); *Lands' End*, 797 F. Supp. at 514 ("A crucial factor in the analysis is if the use of an alleged mark is at a point of sale location.").

Whether a specimen qualifies as a display associated with the goods is a factual question. *See In re Marriott Corp.*, 459 F.2d at 526 ("In our view, 'association with the goods' is a relative term amenable to proof."); *Lands' End*, 797 F. Supp. at 514 ("The determination of whether a specimen is mere advertising or a display associated with the goods is a factual question amenable to proof."); *accord In re Valenite Inc.*, 84 U.S.P.Q.2d 1346 (T.T.A.B. 2007) ("[W]hether a specimen is mere advertising or whether it is a display associated with the goods is a question of fact which must be determined in each case based on the evidence in that particular case." (citing *In re Shipley Co.*, 230 U.S.P.Q. 691 (T.T.A.B. 1986))).

The Board considered whether the Webpage Specimen was mere advertising or an acceptable display associated with the goods.  In doing so, it evaluated the point-of-sale nature of the Webpage Specimen.  It noted the absence of information it considered essential to a purchasing decision, such as a price or range of prices for the goods, the minimum quantities one may order, accepted methods of payment, or how the goods would be shipped.  J.A. 8.  The Board also considered the "For sales information:" text and phone number contact.  It assumed that the phone number would connect a prospective customer to sales personnel, but it found that "if virtually all important aspects of the transaction must be determined from information extraneous to the web page, then the web page is not a point of sale."  J.A. 9; *see* J.A. 6 ("A simple invitation to call applicant to get information—even to get quotes for placing orders—does not provide a means of ordering the product." (quoting *In re U.S. Tsubaki, Inc.*, 109 U.S.P.Q.2d 2002, 2005 (T.T.A.B. 2014))).  The Board further noted the absence of any evidence (as opposed to attorney argument) of how sales are actually made—e.g., documentation or verified statements from knowledgeable personnel as to what happens and how.  J.A. 9. [1]

Siny's main argument on appeal is that the Board applied "overly rigid requirements" in determining that the Webpage Specimen did not qualify as a display associated with the goods.  Siny's Br. 7; *see id.* at 12.  Siny correctly observes that we have cautioned against bright-line rules in this context.  *See In re Sones*, 590 F.3d at 1288–89 (holding that "a picture is not a mandatory requirement for a website-based specimen of use" and disapproving of the

---

[1]    Unlike the webpages of some electronic marketplaces, the Webpage Specimen at issue in this case does not make the goods available for purchase through the webpage.

"rigid, bright-line rule" the PTO applied). But we disagree that the Board applied improperly rigid requirements here. Rather, the Board carefully considered the Webpage Specimen's contents and determined, on the record before it, that the specimen did not cross the line from mere advertising to an acceptable display associated with the goods. We cannot say that the Board's determination lacked substantial evidence.

We have considered Siny's other arguments and find them unpersuasive. For the foregoing reasons, we affirm.

**AFFIRMED**