THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed: July 1, 2024

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Locus Link USA*

_____

Expungement No. 2022-100137E for Registration No. 5376467
Expungement No. 2022-100138E for Registration No. 5376466

_____

Sul Lee of Sul Lee Law Firm, PLLC, for Locus Link USA.

Laura E. Fionda, USPTO Trademark Attorney Advisor, Law Office 800,
    Montia Pressey, Director for Trademark Register Protection.[1]

_____

Before Shaw, Larkin, and Elgin,
    Administrative Trademark Judges.

Opinion by Elgin, Administrative Trademark Judge:[2]

---

[1] Attorney Advisor Dawn-Marie Sanok from the Office of the Deputy Commissioner for Trademark Examination Policy prosecuted the expungement proceeding. Attorney Advisor Laura Fionda filed the brief on appeal. We refer to them collectively as the "Attorney Advisor."

[2] As part of an internal Board pilot citation program on broadening acceptable forms of legal citation in Board cases, citations in this opinion are in the form recommended in the TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 101.03 (2024). This opinion cites decisions of the U.S. Court of Appeals for the Federal Circuit and the U.S. Court of Customs and Patent Appeals by the page(s) on which they appear in the Federal Reporter (e.g., F.2d, F.3d, or F.4th). For orders of the Board, this order employs citations to the Lexis legal database and cites only precedential decisions. Practitioners should also adhere to the practice set forth in TBMP § 101.03. Precedential decisions of the Board, and precedential decisions of the Federal Circuit involving Board decisions that issued January 1, 2008, or after may be viewed in TTABVUE by entering the proceeding number, application number, registration number, expungement/reexamination number, mark, party, or correspondent.

Registrant Locus Link USA appeals decisions of the Director of the United States Patent and Trademark Office ("USPTO") to cancel its Principal Register registrations for SMARTLOCK in standard characters and SMARTLOCK (together, the "SMARTLOCK Marks"), both in connection with: "Components for air conditioning and cooling systems, namely, evaporative air coolers," in International Class 11.[3]

Because the two proceedings present identical issues, we exercise our discretion to issue a single opinion deciding both cases, although the cases have not been consolidated.[4] *In re Pohl-Boskamp GmbH & Co.*, Ser. No. 85007428, 2013 TTAB LEXIS 7, at *3 (TTAB 2013) (two appeals involving common issues of law and fact decided in a single opinion); *In re Binion*, Ser. No. 76590702, 2009 TTAB LEXIS 701, at *3 (TTAB 2009) (because appeals involved common questions of law and fact and

---

Many precedential Board decisions that issued from 1996 to 2008 are available online from the TTAB Reading Room by entering the same information. Most TTAB decisions that issued prior to 1996 are not available in USPTO databases.

[3] Registration No. 5376466 (standard character) (the "'466 Registration"), the subject of Exp. No. 2022-100138E, and Registration No. 5376467 (composite) (the "'467 Registration"), the subject of Exp. No. 2022-100137E, both issued on January 9, 2018 based on applications filed under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), claiming first use and first use in commerce as least as early as March 15, 2017. The composite mark is described as consisting of "the words 'SMART LOCK' between two lines."

[4] Citations to filings with the Board are to TTABVUE. Citations to the records of the expungement proceedings, handled by the Office of the Deputy Commissioner for Trademark Examination Policy, refer to the .pdf versions in the TSDR system for each registration. *See In re Integra Biosciences Corp.*, Ser. No. 87484450, 2022 TTAB LEXIS 17, at *6 (TTAB 2022); *New Era Cap Co. v. Pro Era, LLC*, Opp. No. 91216455, 2020 TTAB LEXIS 199, at *4 n.1 (TTAB 2020).

The records of the two proceedings overlap, but they are not identical. The Board's TTABVUE docket system in Exp. No. 2022-100137E ('467 Registration) contains additional filings that are not relevant to our decision, but are not contained in the docket for Exp. No. 2022-100138E ('466 Registration). The evidence included in the TSDR records is not identical. *See infra* note 19. Where the records differ in TTABVUE or TSDR, citation to each is made separately.

records were practically identical, Board decided both in a single opinion); *see also* TBMP § 1309 (Board may issue a single decision in related expungement and reexamination proceedings).

## I. Nature of the Proceedings

Expungement and reexamination proceedings are ex parte proceedings created by the Trademark Modernization Act of 2020. *Common Sense Press Inc. v. Van Sciver*, Can. No. 92075375, 2023 TTAB LEXIS 173, at *5 (TTAB 2023) (citing Trademark Act Section 1066a (expungement), 1066b (reexamination), 15 U.S.C. §§ 1066a, 1066b; Trademark Rules 2.91-2.94, 37 C.F.R. §§ 2.91-2.94). Both types of proceedings are instituted by the USPTO Director in connection with a registration, either on the Director's own initiative or pursuant to receiving a petition, upon determining that information and evidence supports a prima facie case of nonuse of the registered mark for some or all of the goods or services identified in the registration as of the relevant time period. *Id.* (citing Trademark Act Sections 1066a(c)(1), 1066b(d)(1), 15 U.S.C §§ 1066a(c)(1), 1066b(d)(1); 37 C.F.R. § 2.92); *see also* TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP) § 1716 (May 2024). The relevant time period will vary depending on the type of proceeding instituted and the filing basis of the application leading to the subject registration. *See generally* TMEP § 1716.02(a).

"The Trademark Act 'provides for registration of a mark based on use of the mark in commerce.'" *In re Yarnell Ice Cream, LLC*, Ser. No. 86824279, 2019 TTAB LEXIS 208, at *39-40 (TTAB 2019) (quoting *In re Siny Corp.*, 920 F.3d 1331, 1335 (Fed. Cir.

2019)); *see also Grand Canyon W. Ranch, LLC v. Hualapai Tribe*, Opp. No. 91162008, 2006 TTAB LEXIS 82, at *5 (TTAB 2006).

In an expungement proceeding, the USPTO may cancel a registration issued under Trademark Act Sections 1, 44, or 66(a), 15 U.S.C §§ 1051, 1126, 1141f(a), in whole or in part, if the evidence of record shows that the registered mark has never been used in commerce on or in connection with some or all of the goods and/or services recited in the registration. Trademark Act Section 1066a; Trademark Rule 2.91(a)(1). By contrast, a reexamination proceeding permits the USPTO to cancel a registration issued under Trademark Act Section 1, in whole or in part, if the evidence of record shows that the registered mark was not in use in commerce on or in connection with some or all of the goods and/or services as of the filing date of the application or an amendment to allege use, or before the deadline for filing a statement of use, as applicable. Trademark Act Section 1066b; Trademark Rule 2.91(a)(2).

In response to a notice of institution of an expungement or reexamination proceeding, a registrant may respond to the petition on the merits; delete goods or services at issue; surrender the registration for cancellation; or amend the registration. Trademark Rules 2.93(d)(3), 2.172, 2.173, 37 C.F.R. §§ 2.93(d)(3), 2.172, 2.173. However, "no amendment in the identification of goods or services . . . in a registration will be permitted except to restrict the identification or to change it in ways that would not require republication of the mark." Trademark Rule 2.173(e); *see also* TBMP § 1307.

## II.    Background

On July 12, 2022, a third party filed Petitions for Expungement of the subject registrations with the USPTO, alleging that the subject registered trademarks have never been used in commerce in connection with the identified goods.[5] On September 29, 2022, the expungement proceedings were instituted and the Attorney Advisor issued nonfinal office actions proposing cancellation upon finding that the petitions and accompanying evidence set forth prima facie cases that the SMARTLOCK Marks were never in use in commerce with any of the goods listed in the registrations, under Trademark Act Section 1066a(c)(1), 15 U.S.C. § 1066a(c)(1); and Trademark Rules 2.92(f)(2) and 2.93(a), 37 C.F.R. §§ 2.92(f)(2), 2.93(a).[6] After Registrant responded to the office actions with arguments and evidence,[7] the Attorney Advisor issued final office actions maintaining the decisions to cancel the registrations.[8]

Registrant initiated these appeals[9] and requested reconsideration to submit additional declarations and documentary evidence, as well as suspension of the appeals and remand for that purpose.[10] Following remand, the requests for reconsideration were denied and the appeals resumed.[11] Registrant and the Attorney

---

[5] July 12, 2022 Petition for Expungement at TSDR 7.

[6] September 29, 2022 Combined Notice of Institution and Nonfinal Office Action at TSDR 2.

[7] December 27, 2022 Response to Office Action.

[8] February 2, 2023 Final Office Action.

[9] May 1, 2023 Expungement Ex Parte Appeal, 1 TTABVUE.

[10] May 1, 2023 Requests for Reconsideration.

[11] August 2, 2023 Denials of Reconsideration and Resumption of Proceedings (4 and 5 TTABVUE).

Advisor filed briefs in both appeals.[12] Registrant was not required to file a reply and did not do so. Trademark Rule 2.142, 37 C.F.R. § 2.142.

We affirm the decision to cancel both registrations based on nonuse in connection with the identified goods.

## III. Discussion

A registration based on Trademark Act Section 1(a) is based on use of the applied-for mark in commerce for the goods or services that are identified in the registration. Registrant explains that the goods identified in its subject registration, "Components for air conditioning and cooling systems, namely, evaporative air coolers," are "used for the purpose of connecting and sealing the copper and aluminum tubes and valves contained in various cooling systems, such as air conditioners and evaporative air coolers, together to facilitate the flow of air without the need for brazing, flaring, or tools."[13] According to Registrant's Chief Executive Officer, the identified goods are "refrigerant fittings for use in connection with [heating, ventilation, and air conditioning/refrigeration] units, such as air conditioning and cooling systems, including, but not limited to evaporative air coolers."[14]

---

[12] The Registrant's briefs in both proceedings are at 6 TTABVUE. The Attorney Advisor's brief in Exp. No. 2022-100138E ('466 Registration) is at 8 TTABVUE, and at 11 TTABVUE in Exp. No. 2022-100137E ('467 Registration).

[13] Registrant's Br. at 10 (6 TTABVUE 11); *see also* Registrant's Br. at 4 ("SMARTLOCK® products are components used in air conditioning and cooling systems, such as evaporative air coolers.") (*id.* at 5).

[14] Brian Kim Decl. ¶ 4, December 27, 2022 Response to Office Action at TSDR 12.

In response to the Office Actions, Registrant explained the nature of its products under the SMARTLOCK Marks and provided several photographic examples, including those shown below:[15]

## OUR PRODUCTS



**FLARE CONNECTOR MULTI ANGLE (FCMA)**

Connects copper/aluminum tube to flare valves without the need for flaring.



**ELBOW UNION (ELUN)**

Connects same-sized copper/aluminum tube to copper/ aluminum tube at a 90-degree angle. There is no reduction in flow.

Other evidence provided by Registrant demonstrates that its connectors link two elements of an air cooling system via metal tubing, as shown by the following illustrative diagram and photo of Registrant's products (shown in red) in situ:[16]

---

[15] May 1, 2023 Requests for Reconsideration at TSDR 6, 9.

[16] *Id.* at TSDR 10, 12.





The Attorney Advisor contends Registrant has never used the SMARTLOCK Marks in connection with the identified goods, that is: "Components for air conditioning and cooling systems, namely, evaporative air coolers." Boiled down to its essence, the Attorney Advisor's argument is that the subject registrations cover only the specific goods following the term "namely" in the identification: in this case,

evaporative air coolers.[17] The Attorney Advisor argues that Registrant has used the SMARTLOCK Marks in connection only with connectors that may be used with evaporative air coolers, not with "evaporative air coolers" themselves.[18] The Attorney Advisor also contends that Registrant's use of the mark on the connectors does not show use in connection with finished goods classified in Class 11.[19]

Registrant agrees, and therefore we find, that Registrant has not used the SMARTLOCK Marks in commerce in connection with fully-manufactured "evaporative air coolers."[20] Nonetheless, Registrant argues in favor of an alternative

---

[17] Attorney Advisor's Br. at 4-8, 12-13 (Exp. No. 2022-100138E ('466 Registration), 8 TTABVUE 4-8, 12-13; Exp. No. 2022-100137E ('467 Registration), 11 TTABVUE 4-8, 12-13).

[18] Attorney Advisor's Br. at 8-12 (Exp. No. 2022-100138E ('466 Registration), 8 TTABVUE 8-12); Exp. No. 2022-100137E ('467 Registration), 11 TTABVUE 8-12).

[19] Attorney Advisor's Br. at 7-8, 9 (Exp. No. 2022-100138E ('466 Registration), 8 TTABVUE 7-8, 9; Exp. No. 2022-100137E ('467 Registration), 11 TTABVUE 7-8, 9). The Attorney Advisor made of record TSDR records of "representative" third-party registrations containing the identical identification as the subject registrations, along with specimens of use submitted in support of these registrations depicting evaporative air coolers. The third-party registrations submitted in the proceedings overlap significantly, but are not identical. *See* August 2, 2023 Denials of Requests for Reconsideration, Reg. No. 5376466 at TSDR 10-363; *id.,* Reg. No. 5376467 at TSDR 10-161. We do not find this evidence persuasive. Unlike the subject registrations for the SMARTLOCK Marks, all but two of these third-party registrations include additional items in Class 11, including, e.g., "air conditioners." Because an applicant is required to submit only one specimen per class, Trademark Rule 2.56(a), 37 C.F.R. § 2.56(a), it is not possible on this record to discern which item(s) listed in each identification are represented by the provided specimen of use; indeed, many of the specimens depict products other than evaporative air coolers. The two probative registrations of record depict use of the subject marks on products that could be components of an evaporative air cooler. *See* August 2, 2023 Denials of Requests for Reconsideration at TSDR 22-24 ("featuring the Evapco SENSI-COIL"); *id.*, Reg. No. 5376466 at TSDR 331-35 and Reg. No. 5376467 at TSDR 123-27 ("heavy duty filter housing" and an indeterminate product). Nonetheless, although the USPTO strives for consistency, previous decisions of examiners are not binding upon the USPTO or the Board. "The Board must decide each case on its own merits." *In re Nett Designs Inc.*, 236 F.3d 1339, 1342 (Fed. Cir. 2001).

[20] *See* Registrant's Br. at 10 (6 TTABVUE 11) ("Registrant also noted that it was not his intention to suggest that he offers fully manufactured evaporative air coolers for sale or uses the mark in connection with completed evaporative air coolers . . . . Registrant's description

construction of the identifications to prove that the marks have been used in commerce for the goods identified in the registrations: "In fact, the description identifies [Registrant's] goods as **components for** such goods, and completely disregarding the entire first clause aside from the words directly preceding 'namely' is an inappropriate interpretation of Registrant's description of its goods."[21] Thus, Registrant contends its SMARTLOCK Marks are in use in connection with the goods as identified in the registrations because, in Registrant's view, the identified goods are components for evaporative air coolers.

An application identification should "state common names for goods or services, be as complete and specific as possible, and avoid indefinite words and phrases." TMEP § 1402.03(a), *cited in In re Solid State Design Inc.*, Ser. No. 87269041, 2018 TTAB LEXIS 1, at *18 (TTAB 2018). The purpose of the identification of goods is to provide an understandable description of the goods, which an applicant accomplishes by using the common commercial name for the goods. *Id.* § 1402.01; *see also In re Sones*, 590 F.3d 1282, 1289 (Fed. Cir. 2009) (quoting J. THOMAS MCCARTHY, 2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 19:48 (4th ed. 2008) ("The applicant's identification of goods . . . should identify the goods by their common, ordinary name so that the average person would recognize what they are.")); *In re Thor Tech, Inc.*, Ser. No. 78487208, 2007 TTAB LEXIS 88, at *12 (TTAB 2007) ("park trailer" held to be an acceptable identification, where the applicant's evidence showed

---

makes it abundantly clear that its goods are not completely manufactured evaporative air coolers").

[21] Registrant's Br. at 10 (6 TTABVUE 11).

that it is a term of art generally understood by those in the industry and by consumers as a designation for a type of recreational vehicle).

"[The] applicant must identify the goods and services specifically to provide public notice and to enable the USPTO to classify the goods and services properly and to reach informed judgments concerning likelihood of confusion under 15 U.S.C. § 1052(d)." *In re SICPA Holding SA*, Ser. No. 88488405, 2021 TTAB LEXIS 202, at *4 (TTAB 2021) (quoting *In re Fiat Grp. Mktg. & Corp. Commc'ns S.p.A.*, Ser. No. 79099154, 2014 TTAB LEXIS 29, at *15 (TTAB 2014)); *In re Faucher Indus.*, Ser. No. 85202870, 2013 TTAB LEXIS 313, at *11 (TTAB 2013). "An identification that fails to identify the goods and services with specificity is indefinite, either because the nature of the goods or services is not clear or because the wording is so broad that it may include goods or services in more than one class." *In re Carlton Cellars, LLC*, Ser. No. 87438793, 2020 TTAB LEXIS 14, at *10-11 (TTAB 2020) (citing TMEP § 1402.01) (emphasis omitted).

Turning to the identifications at issue, the term "namely" is definite and is preferred to set forth an identification that requires greater particularity. The goods or services listed after the term "namely" must further define the introductory wording that precedes "namely" using definite terms within the scope of the introductory wording. *In re OSF Healthcare Sys.*, Ser. No. 88706809, 2023 TTAB LEXIS 353, at *17 n.9 (TTAB 2023) (quoting TMEP § 1402.03(a)). In other words, use of the word "namely" in an identification of goods or services is acceptable only when

the words that follow it define and fall within the scope of the introductory wording that precedes "namely" (e.g., "clothing, namely, shirts").

Regarding marks that identify components of products, TMEP § 1402.05(a) states:

> When a mark is used to identify only a component or ingredient of a product, and not the entire product, the identification must (1) precisely set forth the common name of the component or ingredient, (2) indicate that the component or ingredient is sold as a component or ingredient of another finished product, and (3) set forth the common name of the finished product of which the identified component or ingredient forms a part . . . . The identification should leave no doubt that the mark refers only to the component or ingredient and not to the entire product.

Again, Registrant's identifications are: "Components for air conditioning and cooling systems, namely, evaporative air coolers." We agree with the Attorney Advisor that, in this identification, "evaporative air coolers" modifies the otherwise indefinite wording "components for air conditioning and cooling systems." The identification is proper because the wording "evaporative air coolers" is definite and identifies a component for "air conditioning and cooling systems." In other words, the identification of goods, as set forth in the '466 and '467 Registrations, covers evaporative air coolers that *are* components of air cooling systems. It does not identify or encompass component parts *for* evaporative air coolers, such as Registrant's connectors.

Our conclusion that Registrant's connectors are not encompassed by the identification of goods in the subject registrations is consistent with principles of identification and classification of Applicant's identified goods in Class 11, whereas

Applicant's proffered interpretation of the identification is inconsistent with them.[22] TMEP § 1402.05(a) instructs applicants that "[c]omponents or ingredients used for the manufacture of other finished products *that are sold separately from the finished products* [i.e., connectors for air conditioners or evaporative air coolers] are classified in the class of the specified components or ingredients, since the components or ingredients have not yet been transformed into the finished goods." *Id.* (emphasis added). The "classification is then determined by the class of the primary component or components." *Id.* § 1405.02(b) (quoting General Remarks of the Nice Classification). If we were to find, as Registrant argues, that "namely, evaporative air coolers" further defines only "air conditioning and cooling systems" – in other words, that the goods are components of any kind for evaporative air coolers – such unspecified "components" would be not only indefinite, but also overbroad because as specified, these "components" could be classified in different classes depending on their material composition, purpose, or function. For example, metal pipe connectors are classified in Class 6, while non-metal pipe connectors are classified in Class 17.[23]

---

[22] "International trademark classification, and the headings of the international trademark classes, are established by the Committee of Experts of the Nice Union and set forth in the *International Classification of Goods and Services for the Purposes of the Registration of Marks* (Nice Classification) published annually by the World Intellectual Property Organization ('WIPO') on its website." TMEP § 1401.02(a). *See* Nice Agreement Twelfth Edition – version 2024 (NCL 12-2024) (www.uspto.gov/trademarks/trademark-updates-and-announcements/nice-agreement-current-edition-version-general-remarks) (accessed July 1, 2024).

[23] International Class 11 incorporates: "Apparatus and installations for lighting, heating, cooling, steam generating, cooking, drying, ventilating, water supply and sanitary purposes." Class 6 includes: "Common metals and their alloys . . . small items of metal hardware," such as "Metal pipe connectors" and "Couplings and joints of metal for pipes." *See* ID Master List (https://idm-tmng.uspto.gov/id-master-list-public.html) (accessed July 1, 2024). Class 17 includes: "non-metal pipe couplings and joints." *Id.*

Finally, we are not swayed by Registrant's argument that "Registrant's description and specimen were accepted by the trademark examiner that evaluated its trademark application."[24] Neither the Director nor the Board are bound by prior decisions of Examining Attorneys in a subject application that matured into a registration, and the Examining Attorney's acceptance of Applicant's identification and supporting specimens does not preclude evaluation of Applicant's use in this expungement proceeding.[25] Moreover, the acceptance of specimens by the Examining Attorney does not control the ultimate question of use. *Cf. Century 21 Real Estate Corp. v. Century Life of Am.*, Opp. No. 91075090, 1989 TTAB LEXIS 6, at *3 (TTAB 1989) ("[T]he mere acceptance of specimens by the Examining Attorney does not mandate a finding by us that service mark usage was made.").

**Decision**

Because the record reflects that the SMARTLOCK Marks have never been used in commerce for "Components for air conditioning and cooling systems, namely, evaporative air coolers," the decisions to cancel Registration Nos. 5376466 and 5376467 are **affirmed**.

---

[24] Registrant's Br. at 8 (6 TTABVUE 9).

[25] *See supra* note 19.