This Opinion is a
Precedent of the TTAB

Mailed: July 31, 2024

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*In re Gail Weiss*

————

Serial No. 88621608

————

Richard S. Ross, Esq.
    for Gail Weiss.

Andrea Cornwell, Trademark Examining Attorney, Law Office 115,
    Daniel Brody, Managing Attorney.

————

Before Cataldo, Goodman and Pologeorgis,
    Administrative Trademark Judges.

Opinion by Cataldo, Administrative Trademark Judge:

Applicant, Gail Weiss, filed an application seeking registration on the Principal

Register of GABBY'S TABLE, in standard characters, as a mark identifying the

following services:

> Computerized on-line retail store services in the field of food, cooking
> utensils, cookware, culinary arts cookbooks, magazines and videos, and
> lifestyle books, magazines and videos, in International Class 35.[1]

---

[1] Application Serial No. 88621608 was filed on September 18, 2019 pursuant to Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), based upon Applicant's assertion of a bona fide intent to use the mark in commerce. On March 23, 2023, Applicant submitted a Statement of use asserting March 23, 2023 as a date of first use of the mark anywhere and in commerce. The application includes the following consent statement: "The name(s), portrait(s), and/or signature(s) shown in the mark identifies Gail Weiss, whose consent(s) to register is made of

The Trademark Examining Attorney issued a final refusal of registration under Sections 1 and 45 of the Trademark Act, 15 U.S.C. §§ 1051, 1127, on the basis that the specimen of record is unacceptable because it fails to show the applied-for mark in use in commerce in connection with the identified services.

Applicant appealed and requested reconsideration. When the request for reconsideration was denied, the appeal resumed. The appeal is fully briefed.[2] We affirm the refusal to register.

## I. Request for Judicial Notice

Before turning to the merits of this appeal, we address several procedural matters. Applicant's request in her brief[3] and reply brief[4] that we take judicial notice of certain third-party registrations is denied. The proper procedure for an applicant or examining attorney to introduce evidence after an appeal has been filed is to submit a written request with the Board to suspend the appeal and remand the application for further examination. *See* Trademark Rule 2.142(d), 37 C.F.R. § 2.142(d); TBMP § 1207.02 and authorities cited therein. Although the Court of Appeals for the Federal Circuit has exercised its discretion to take judicial notice of a third party's

---

record." The application also identified services in Class 41. These were expressly deleted by Applicant with its March 23, 2023 Statement of Use.

Page references to the application record are to the downloadable .pdf version of the USPTO's Trademark Status & Document Retrieval (TSDR) system. References to the briefs, motions and orders on appeal are to the Board's TTABVUE docket system.

[2] Applicant's main brief and reply brief respectively appear at 6 TTABVUE and 9 TTABVUE. The Examining Attorney's brief appears at 8 TTABVUE.

[3] 6 TTABVUE 13.

[4] 9 TTABVUE 6.

registration, *See In re Chippendales USA, Inc.*, 622 F.3d 1346, 96 USPQ2d 1681 (Fed Cir. 2010), the Board's well-established practice is not to take judicial notice of third-party registrations when an applicant or examining attorney requests that such notice be taken during the course of an appeal. *See* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 1208.02 (June 2024) and authorities cited therein.

Applicant's request in her brief[5] that we follow a hyperlink to take judicial notice of information regarding "Amazon affiliates-associates"[6] is also denied. We have made clear that providing hyperlinks to internet materials is insufficient to make such materials of record. *See In re Olin*, 124 USPQ2d 1327, 1331 n.15 (TTAB 2017) (citing *In re Powermat Inc.*, 105 USPQ2d 1789, 1791 (TTAB 2013)); *In re HSB Solomon Assocs., LLC*, 102 USPQ2d 1269, 1274 (TTAB 2012) (stating that "a reference to a website's internet address is not sufficient to make the content of that website or any pages from that website of record"); *Safer Inc. v. OMS Invs. Inc.*, 94 USPQ2d 1031, 1039 (TTAB 2010) (noting that because of the transitory nature of internet postings, websites referenced only by links may later be modified or deleted). The procedure for making printouts of internet evidence of record is addressed in 37 C.F.R. § 2.53(c); TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP) § 710.01(b) (May 2024) and authorities cited therein.

With regard to the timeliness of Applicant's proffer of hyperlink evidence,

---

[5] 6 TTABVUE 12.

[6] *Id.*

Trademark Rule 2.142(d) reads as follows:

> The record in the application should be complete prior to the filing of an appeal. Evidence should not be filed with the Board after the filing of a notice of appeal. If the appellant or the examining attorney desires to introduce additional evidence after an appeal is filed, the appellant or the examining attorney should submit a request to the Board to suspend the appeal and to remand the application for further examination.

In addition, any otherwise unsupported arguments based upon this excluded evidence will not be considered. *Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 127 USPQ2d 1797, 1799 (Fed. Cir. 2018) ("Attorney argument is no substitute for evidence.") (quoting *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 424 F.3d 1276, 76 USPQ2d 1616, 1622 (Fed. Cir. 2005)); *see also In re U.S. Tsubaki, Inc.*, 109 USPQ2d 2002, 2006 (TTAB 2014) (finding that there was no proof to support the statements in the record by counsel).

We now turn to the merits of this appeal.

## II.   Service Mark Specimens – Applicable Law

The Trademark Act "provides for registration of a mark based on use of the mark in commerce." *In re Siny Corp.*, 920 F.3d 1331, 2019 USPQ2d 11362, at *2 (Fed. Cir. 2019). A service mark is "any word, name, symbol, or device, or any combination thereof ... [used] to identify and distinguish the services of one person ... from the services of others and to indicate the source of the services, even if that source is unknown." 15 U.S.C. § 1127. The USPTO "requires an applicant to submit a specimen of use 'showing the mark as used on or in connection with the goods [or services].'" *In*

*re Siny Corp.*, 2019 USPQ2d 11362, at \*2 (quoting *In re Sones*, 590 F.3d 1282, 93 USPQ2d 1118, 1120 (Fed. Cir. 2009)). The specimen of use, which is required by Section 1 of the Trademark Act and Trademark Rule 2.56, 37 C.F.R. § 2.56, must display the applied-for mark and show an association between the mark and the services. As the TMEP states:

> To be acceptable, a service-mark specimen must show the mark sought to be registered used in a manner that demonstrates a direct association between the mark and the services. 37 C.F.R. §2.56(b)(2). Specimens need not explicitly refer to the services to establish the requisite direct association between the mark and the services, but "there must be something which creates in the mind of the purchaser an association between the mark and the service activity." *In re Cardio Grp., LLC*, 2019 USPQ2d 227232, at \*1 (TTAB 2019) (quoting *In re Way Media*, 118 USPQ2d 1697, 1698 (TTAB 2016)); *see In re JobDiva, Inc.*,843 F.3d 936 121 USPQ2d 1122, 1126 (Fed. Cir. 2016) (quoting *In re Ancor Holdings, LLC*, 79 USPQ2d 1218, 1220 (TTAB 2006) ) ("[T]he question is whether the evidence of JobDiva's use of its marks 'sufficiently creates in the minds of purchasers an association between the mark[s] and [JobDiva's personnel placement and recruitment] services.'").

TMEP § 1301.04(f); *see also In re Universal Oil Prods. Co.*, 476 F.2d 653, 177 USPQ 456, 457 (CCPA 1973) ("The minimum requirement is some direct association between the offer of services and the mark sought to be registered therefor.").

A service mark must be "used in such a manner that it would be readily perceived as identifying" the services, which is "determined by examining the specimens of record in the application." *In re The Ride, LLC*, 2020 USPQ2d 39644, at \*4 (TTAB 2020); *In re Keep A Breast Found.*, 123 USPQ2d 1869, 1876 (TTAB 2017) (quoting *In re Moody's Investors Serv. Inc.*, 13 USPQ2d 2043, 2047 (TTAB 1989)); *accord In re Osmotica Holdings Corp.*, 95 USPQ2d 1666, 1668 (TTAB 2010) ( "At a minimum, the

specimen must show a direct association between the services and the mark sought to be registered."). "A specimen that shows only the mark with no reference to, or association with, the services does not show service mark usage." *In re DSM Pharm., Inc.*, 87 USPQ2d 1623, 1624 (TTAB 2008).

## III.    Arguments and Evidence

Applicant's specimen of use, submitted with her March 23, 2023 Statement of Use, consists of "website marketing and advertising."[7] Relevant portions of the specimen of use are reproduced below.

The Examining Attorney argues:

> Specifically, the specimen shows a list of items recommended for purchase, but the website does not offer the consumer retail store services in order to purchase the goods. As shown by the evidence of record, clicking on the "Buy now" button shown near the goods redirects consumers to third-party websites, such as those of Amazon, Cuisinart, and Queen Creek Olive Mill, which offer retail store services to consumers. Office action denying request for reconsideration, October 23, 2023, at pp. 3-25. Therefore, the specimen does not show use of the applied-for mark in connection with the stated Class 35 services.[8]

The "Shop" portion of the "Home" page, located on page five (of six) of Applicant's original specimen, including the "Buy now" buttons referenced by the Examining

---

[7] March 23, 2023 Statement of Use at 1.

[8] 8 TTABVUE 2.

Attorney,        is        reproduced        directly        below.[9]





### Outset Grill Press Rectangular 9x5"
by Bed, Bath & Beyond

Feeling pressed to grill the best burger? Our cast iron grill press grills burgers flat cooking both sides of meat with even heat while pressing out unwanted fats. Use on the grill or in the kitchen on any grilled meat, sandwich, or to keep bacon from curling. The rosewood handle stays cool for safe and easy handling. Great for both indoor and outdoor use.

◑ BUY NOW



### 14 Cup Programmable Coffeemaker
by Cuisinart

Turn up the flavor and the temperature on your coffee with the Cuisinart® 14 Cup Programmable Coffeemaker! Using our cutting edge coffee technology, the 14 Cup Programmable Coffeemaker can give you hotter coffee without sacrificing taste. Choose a regular or bold flavor profile and set the brew-time up to 24 hours ahead so your next cup is ready when you are. The backlit LCD is easy-to-read, a ready tone can be turned on or off, and an indicator light signals when it's time to decalcify.

◑ BUY NOW



### SWEET RED PEPPER & OLIVE
by Queen Creek Olive Mill

Sweet red peppers and fruity green olives are coarsely ground by hand and blended with our own Queen Creek Olive Mill extra virgin olive oil, capers, garlic, and other spices to create our tangy and savory Sweet Red Pepper Olive Tapenade. This tapenade is wonderful as a spread on cocktail crackers or toasted baguette slices, but it doesn't stop there. Toss it with freshly cooked pasta for an innovative and fresh Italian dish. Use it on pizzas, toss it with salads, and use it as a topping for hot dogs and sausages. Philly cheesesteak with peppers anyone? The possibilities are endless!

◑ BUY NOW



### Crosse & Blackwell Premium 100% Non-Pareil Capers, 3.5 ounces
by Crosse & Blackwell

The Crosse & Blackwell brand has been a beloved British tradition since 1706. Our products reflect a sampling of England's culinary influences: unique products with the fine ingredients, exotic recipes and robust flavor. Originally founded as West and Wyatt, the company was purchased in 1830 by Edmund Crosse and Thomas Blackwell.

◑ BUY NOW



### HAND PEELED WHOLE TOMATOES
by MASSERIA MIROGALLO

Queen of the preserves, the tomato puree has always been an irreplaceable ingredient of the Mediterranean cuisine.
Made only with fresh tomatoes from our own production, blanched in boiling water and passed through a sieve, as to obtain a full-bodied and aromatic compound, is poured, as it is or used for the production of tasty sauces.
Spaccatelle and peeled tomatoes by hand, typical Lucan specialties, complete our range

◑ BUY NOW

EDIT
Edit with WPBakery Page Builder

03/23/2023  1:35 AM ET

© 2023 Gabby's Table. All Rights Reserved.

In support of her contentions that the specimen does not support use for the identified services, the Examining Attorney submitted the following screenshots from page five of the website comprising Applicant's specimen.[10]



[11]

---

[10] Highlights in red provided by the Examining Attorney.

[11] March 29, 2023 non-final Office action at 4.





---

[12] October 23, 2023 denial of request for reconsideration at 3.

[13] *Id.* at 18.



The Examining Attorney further submitted screenshots of webpages from Amazon.com, showing the product description page for certain of the above products, accessed from the link provided on Applicant's above webpage. The following example is illustrative.[15]

---

[14] *Id.* at 22.

[15] June 30, 2023 final Office action at 5-15; October 23, 2023 denial of request for reconsideration at 4-17, 19-21, 23-25.



16

The Examining Attorney also submitted screenshots from Amazon.com's Amazon

Associates page.[17]

> Amazon Associates – Amazon's affiliate marketing program
> Welcome to one of the largest affiliate marketing programs in the world.
> The Amazon Associates Program helps content creators, publishers and
> bloggers monetize their traffic. With millions of products and programs
> available on Amazon, associates use easy link-building tools to direct
> their audience to their recommendations, and earn from qualifying
> purchases and programs.[18]

---

[16] *Id.* at 5.

[17] *Id.* at 16-17.

[18] *Id.* at 16.

Applicant submitted copies of internet articles discussing various aspects of launching and operating an ecommerce store on Amazon.com. These articles are excerpted below:

"Amazon Associates – How to Start An Amazon Affiliate Store for Less Than $3"[19]

What Is An Amazon Affiliate Store?
The overall strategy for this post is to create an Amazon affiliate store to both make money and to research the market for future private label products to sell.
In other words, you are going to create product listings on an online store website that you own just like a regular ecommerce shop.
However instead of listing your own products for sale, you are going to direct customers directly to Amazon with your affiliate links.[20]

"How to Create an Amazon Affiliate Store (Step by Step)[21]

How Amazon Affiliate Store Makes Money
The Amazon Associates is an affiliate program by Amazon that pays you for referring Amazon products. If a user purchases a product from your referral, you receive a commission.[22]

"How To Create An Amazon Affiliate Store [Ultimate Guide][23]

What is the Amazon Associates Program?
Amazon Associates is a platform for anyone interested in affiliate marketing to make money from their website by linking to products or offers listed on Amazon.com. You'll earn a commission each time someone clicks on your affiliate link and completes a path – this might be to purchase or sign up to a database.[24]

---

[19] June 27, 2023 response to Office action at 11-37.

[20] *Id.* at 18.

[21] *Id.* at 38-61.

[22] *Id.* at 39.

[23] *Id.* 62-78.

[24] *Id.* at 67.

"How to Build an Amazon Affiliate Store Using WordPress"[25]

> What is an Amazon Affiliate Store?
> An Amazon affiliate store is an online store that promotes products that are available to buy on Amazon. … When visitors arrive at your website, they'll see all the different products they can buy on Amazon using your unique affiliate referral links.[26]

"What is ecommerce? Launch and grow an online sales channel"[27]

> What is ecommerce?
> "Ecommerce" or "electronic commerce" is the trading of goods and services on the internet. It is your bustling city center or brick-and-mortar shop translated into zeroes and ones on the internet superhighway. An estimated 2.14 billion people worldwide buy goods and services online, and the number of Prime members shopping Amazon stores globally now tops 200 million.
>
> Ecommerce is one way people buy and sell things in retail. Some companies sell products online only, while other sellers use ecommerce as a part of a broader strategy that includes physical stores and other distribution channels. Either way, ecommerce allows startups, small businesses, and large companies to sell products at scale and reach customers across the world.[28]

Applicant also submitted copies of third-party registrations owned by ecommerce companies Amazon Technologies, Inc. (Reg. No. 5508999) and Etsy, Inc. (Reg. No. 1486986) identifying, inter alia, retail store services and online retail store services featuring various types of goods.[29]

---

[25] *Id.* at 79-133.

[26] *Id.* at 80.

[27] *Id.* at 134-147.

[28] *Id.* at 134.

[29] *Id.* at 147-152.

## IV.    Analysis

First, we note Applicant's specimen displays the GABBY'S TABLE mark shown in the drawing, as required by Trademark Rule 2.51, 37 C.F.R. § 2.51(a) ("the drawing of the mark must be a substantially exact representation of the mark as used on or in connection with the goods and/or services"). Thus, we find the drawing displaying Applicant's GABBY'S TABLE mark is the exact representation of the mark as it appears on each page of Applicant's specimen of use. *In re Lorillard Licensing Co.*, 99 USPQ2d 1312, 1316 (TTAB 2011). A mark creates a separate and distinct commercial impression if it is not "so entwined (physically or conceptually) with other material that it is not separable from it in the mind of the consumer." *In re Yale Sportswear Corp.*, 88 USPQ2d 1121, 1123 (TTAB 2008) (quoting *In re Chem. Dynamics Inc.*, 839 F.2d 1569, 5 USPQ2d 1828, 1830 (Fed. Cir. 1988).

Nonetheless, an acceptable specimen must show "some direct association between the offer of services and the mark sought to be registered therefor." *In re Universal Oil Prods.*, 177 USPQ at 457. A specimen that shows only the mark with no reference to, or association with, the identified services does not show service mark usage. *In re Adair,* 45 USPQ2d 1211, 1214-15 (TTAB 1997); *In re Duratech Indus. Inc.,* 13 USPQ2d 2052, 2054 (TTAB 1989). "For specimens showing the mark in advertising the services, in order to create the required 'direct association,' the specimen must not only contain a reference to the service, but also the mark must be used on the specimen to identify the service and its source." *In re Way Media*, 118 USPQ2d at 1698 (quoting *In re Osmotica Holdings*, 95 USPQ2d at 1668). Specimens showing the

mark used in rendering the identified services need not explicitly refer to those services in order to establish the requisite direct association between the mark and the services. However, "there must be something which creates in the mind of the purchaser an association between the mark and the service activity." *In re Johnson Controls, Inc.*, 33 USPQ2d 1318, 1320 (TTAB 1994).

An acceptable specimen must show a direct association between the proposed mark GABBY'S TABLE and "Computerized on-line retail store services in the field of food, cooking utensils, cookware, culinary arts cookbooks, magazines and videos, and lifestyle books, magazines and videos," in International Class 35. "Retail services" entail "the sale of goods to ultimate consumers, usually in small quantities; pertaining to, connected with, or engaged in sale at retail."[30] Thus, we must determine whether Applicant's specimen demonstrates consumers may purchase goods from Applicant's website.

Page five of Applicant's specimen, as shown above, displays products recommended by Applicant under the heading "Gabby's Table Recommends" accompanied by a photograph, product description and "BUY NOW" button. This is the only page of Applicant's specimen that potentially displays Applicant's mark in

---

[30] Definition retrieved from Dictionary.com on July 31, 2024. "The Board may take judicial notice of dictionary definitions, including online dictionaries which exist in printed format or have fixed regular editions." *In re Nextgen Mgmt., LLC*, 2023 USPQ2d 14, at *9 n.5 (TTAB 2023); *see also Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imps. Co.*, 213 USPQ 594, 596 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

connection with her identified services.[31] The Examining Attorney's evidence establishes that hovering a computer mouse over the "BUY NOW" button displays a link to third-party websites, including Amazon.com, Cuisinart.com and QueenCreekOliveMill.com.[32] The Examining Attorney's evidence further establishes that clicking on the "BUY NOW" button on Applicant's specimen takes the user to a product description page on third-party websites, such as Amazon.com, where the user may purchase the product.[33]

Applicant argues: "The consumers can immediately purchase the recommended products directly from the Applicant's website's BUY NOW button, and complete the payment processing through a third-party payment processor website."[34] However, the Examining Attorney's evidence establishes that attempted purchases of recommended products from the "BUY NOW" buttons re-direct the potential purchaser from Applicant's website to a third-party retail website to view the product and determine whether to purchase it from the third party. Applicant has not introduced any evidence to support her contention that consumers may purchase products she recommends directly from Applicant's website. Despite the presence of "BUY NOW" buttons on Applicant's webpage, Applicant does not herself sell the products she

---

[31] We again emphasize that Applicant's "substitute specimen" consists of a resubmission of a portion of page five of the original specimen of use.

[32] March 29, 2023 non-final Office action at 4; October 23, 2023 denial of request for reconsideration at 3, 18 and 22.

[33] June 30, 2023 final Office action at 5-15; October 23, 2023 denial of request for reconsideration at 4-17, 19-21, 23-25.

[34] 6 TTABVUE 6.

recommends. Applicant's specimen does not display, for instance, a virtual "shopping cart," pricing, shipping information, or any other indicia of online retail store services. Rather, Applicant's own evidence[35] indicates that Applicant provides referrals and recommendations of cooking and food-related products offered for sale by third parties. The Examining Attorney's evidence further shows pricing information and a shopping cart on the third-party online retail websites to which potential purchasers are re-directed from Applicant's "BUY NOW" buttons.[36]

Applicant presents several additional arguments in favor of the sufficiency of her specimen of use. Applicant argues:

> First, the Applicant's specimens show use of the services in the form of providing "shelf space" for the goods of others. When a consumer sees a product offered on the Applicant's "shelf" and decides to purchase it, she then and only then clicks the BUY NOW button where she is directed to pay for the goods immediately. The goods are then delivered to the consumer. This digital format of on-line retail store services is not unlike a brick and mortar format for consignment stores.[37]

As discussed above, there is no evidence that consumers may purchase goods from Applicant. To the contrary, Applicant recommends products and consumers seeking to purchase them from Applicant's webpage are immediately redirected to third-party retailers offering the recommended products for sale. Only then may consumers purchase the products from the third-party. Unlike online consignment services

---

[35] June 27, 2023 response to Office action at 11-147.

[36] June 30, 2023 final Office action at 5-15; October 23, 2023 denial of request for reconsideration at 4-17, 19-21, 23-25.

[37] 6 TTABVUE 10.

whereby goods are received on consignment and sold in online retail stores featuring, for instance, cooking and food-related products, Applicant provides referrals of cooking and food-related products offered for sale by others.

Applicant next argues:

> Second, the industry understands and accepts that Amazon.com offers an Amazon Associate's program, such as is evidenced by the record, that allows an associate-affiliate to start and operate an "Amazon affiliate store." … The Applicant, through her GABBY'S TABLE website, generates revenue by connecting buyers and sellers in which a payment processor, Amazon.com, enables the exchange of the goods purchased on her website.[38]

Applicant's own evidence regarding Amazon Associates, excerpted above, indicates that Applicant's "Amazon affiliate store" is a referral service, not a retail store service:

> However instead of listing your own products for sale, you are going to direct customers directly to Amazon with your affiliate links.[39]

> An Amazon affiliate store is an online store that promotes products that are available to buy on Amazon. … When visitors arrive at your website, they'll see all the different products they can buy on Amazon using your unique affiliate referral links.[40]

Applicant recommends products and refers potential customers to third-party retailers such as Amazon.com where they may purchase the referred products from the third party, not from Applicant. Merely calling Applicant's services an "affiliate store" does not change her referral s into online retail store services. Applicant's "affiliate

---

[38] 6 TTABVUE 12.

[39] June 27, 2023 response to Office action at 11-37.

[40] *Id.* at 80.

store" "promotes products that are available to buy on Amazon."[41] The above evidence submitted by Applicant and the Examining Attorney demonstrates that any sales of the products referred by Applicant take place on third-party websites, and that it is the third parties who are providing the online retail store services. *Cf. In re Quantum Foods Inc.*, 94 USPQ2d 1375, 1379 (TTAB 2010) ("[T]he webpage does not show an actual offer for sale of the goods identified in the application and the opportunity and means to complete an on-line purchase of any goods.").

Applicant then argues: "the PTO has treated service marks such as AMAZON and ETSY as online retail stores, in U.S. Reg. Nos. 5,508,999 and 5,762,753, respectively."[42] As discussed above, the provision of online retail store services by Amazon or Etsy does not necessitate a finding that Applicant's referral services – including referrals to products available on Amazon.com – constitute online retail store services. The nature of their services differs from those offered by Applicant. Further, the allowance for registration of the third-party registrations submitted by Applicant is not probative of the sufficiency of Applicant's specimen of use in this case. "It has been said many times that each case must be decided on its own facts." *In re Eagle Crest Inc.*, 96 USPQ2d 1227, 1229 (TTAB 2010); *citing, e.g., In re Cordua Rests., Inc.*, 823 F.3d 594, 600, 118 USPQ2d 1632, 1640 (Fed. Cir. 2016) ("The PTO is required to examine all trademark applications for compliance with each and every eligibility requirement . . . .").

---

[41] *Id.* at 80.

[42] 6 TTABVUE 13.

Applicant correctly recites the precedential law applicable to service mark specimens. As discussed above, we agree with Applicant that the specimen displays the applied-for mark. We further agree that "[t]o determine whether a mark is used in connection with the services described in the [application], a key consideration is the perception of the user." *JobDiva,* 121 USPQ2d at 1126. However, Applicant has submitted no evidence to support her contention that consumers clicking the "BUY NOW" buttons on her website, upon being re-directed to a product description on a third-party vendor website where they may then purchase the product from that vendor, will perceive that Applicant herself is providing online retail store services. The evidence of record demonstrates that consumers may not consummate a purchase of goods recommended by Applicant from her own website. To the contrary, Applicant recommends and refers consumers to purchase products from third parties.

Finally, Applicant argues that the specimen, plus her explanations offered to clarify the context in which the specimen is encountered by users, are sufficient to render acceptable the specimen for the identified online retail store services. *In re Pitney Bowes, Inc.*, 125 USPQ2d 1417, 1420 (TTAB 2018) ("Both precedent and examination guidance make clear that in assessing the specimens, consideration must be given not only to the information provided by the specimen itself, but also to any explanations offered by Applicant clarifying the nature, content, or context of use of the specimen that are consistent with what the specimen itself shows."); *In re Metriplex, Inc.*, 23 USPQ2d 1315, 1316 (TTAB 1992) (submitted specimens acceptable

based, in part, on applicant's explanation that the specimens showed the mark as it appeared on a computer terminal in the course of rendering the services.).

However, Applicant's explanations are inconsistent with what the specimen itself shows, namely, that users attempting to purchase recommended products are re-directed to the website of a third party vendor to further view a description of the product in anticipation of purchase. Simply put, the specimen of use, Applicant's explanations, and the evidence of record show that Applicant provides referrals of products for sale by third parties on their websites. The specimen does not show GABBY'S TABLE in use in commerce for Computerized on-line retail store services in the field of food, cooking utensils, cookware, culinary arts cookbooks, magazines and videos, and lifestyle books, magazines and videos, in International Class 35.

## V.    Decision:

The refusal to register Applicant's proposed mark GABBY'S TABLE  pursuant to Sections 1 and 45 of the Trademark Act on the ground that the specimen of use fails to show the applied-for mark in use in commerce in connection with the services, is affirmed.